## Western Union Telegraph Company v. Mason.

(Decided December 20, 1929.)

238

BREATHITT & BREATHITT and FRANCIS R. STARK for appellant.

JOHN C. DUFFY and DENNY P. SMITH for appellee.

OPINION OF THE COURT BY JUDGE REES—Reversing.

The appellee, Frank H. Mason, Jr., was employed by Western Union Telegraph Company, hereafter referred to as the company, as a messenger boy in Miami, Fla. He was on duty from 3 o'clock in the afternoon untill 11 o'clock at night. On March 27, 1926, and about 6 o'clock in the afternoon, Mason left the office of the company on his motorcycle to go to his boarding house for the purpose of obtaining his flashlight to be used by him in delivering messages during the evening. While he was riding to his boarding house for the searchlight, his motorcycle collided with an automobile, and he suffered a compound fracture of his right leg, and was taken to the Jackson Memorial Hospital. Dr. M. K. Jaudon, a physician and surgeon, was regularly employed by the company to treat its employees who were injured in the course of their employment. Some one connected with the hospital notified Dr. Jaudon by telephone that an employee of the company had been injured and was in the hospital. Dr. Jaudon was ill at the time, and he directed his associate, Dr. M. E. Threlkeld, to go to the hospital and take charge of the case. Dr. Threlkeld reached the hospital about 8 o'clock in the evening, and proceeded to reduce the fracture. Mason was placed under an anaesthetic, and an X-ray picture of the leg was taken. When the picture was developed on the following day, it disclosed that the bones in appellee's leg were badly shattered, and that a perfect union had not been obtained, and Dr. Threlkeld made further effort to reduce the fracture and to get the bones in proper alignment. He placed appellee's leg in splints, and they were allowed to remain on the leg for two or three weeks, when they were removed and the leg was placed in a plaster cast. Two or three days thereafter appellee left the hospital, and as soon, as he was able to secure a reservation on a Pullman he left for his home in Hopkinsville, Ky. When he arrived there, he was suffering

considerably, and an examination of his leg by local physicians disclosed that the bones in his leg were out of alignment, and it was necessary to put him under an anaesthetic and reset the broken bones.

Appellee brought this action against the Western Union Telegraph Company for damages alleged to have been caused by the negligent manner in which he had been treated by Dr. Threlkeld, and that the company had been negligent in selecting an incompetent surgeon to treat him. The company in its answer, after traversing the allegations of the petition, alleged that Mason received the injury complained of at a time when he was not on duty, and that he was treated by a physician selected by some one other than the defendant or any of its agents. Upon a trial of the case the jury returned a verdict for the plaintiff in the sum of $1,500 and from the judgment entered thereon the company has appealed.

The company had put into effect a plan known as a "plan for employees' pensions, disability benefits and death benefits," by which all employees of the company were to receive certain payments on account of physical disability to work by reason of accidental injury arising out of and in the course of employment by the company. Section 6, subsec. 5, of the regulations reads:

"Accidental injuries shall be considered as arising out of and in the course of employment only where the injury has resulted solely from accident during and in direct connection with the performance of duties in the service of the company to which the employee is assigned or which he is directed to perform by proper authority or in voluntarily protecting the company's property or interests. There must be a clear and well established history of the cause and circumstances of injury accidentally inflicted and the cause must be sufficient to produce the alleged injury and there must be satisfactory evidence that such injury renders the employee unable to perform his duty in the service of the company."

Section 6, subsec. 7, of the regulations, reads in part:

"In case of accidental injury to an employee arising out of and in the course of employment by the company, the necessary expenses for the 'first aid'

may, on approval of the committee, be charged to the fund. In addition the committee will pay for necessary surgical treatment, but no employee shall have authority to contract any bills against the company or the committee and nothing herein shall be held to mean or imply that the committee will be responsible for such bills as an employee may contract or his surgeon may charge."

It is clear that under these regulations appellee's injury was not received in the course of his employment. He was performing no duty for the company at the time; he was on an errand intended for his own convenience. However, if the company volunteered to provide a physician to treat the appellee, its liability is the same as though it had been under a duty to do so as will be hereafter pointed out. The company had nothing to do with calling the physician in the first instance to treat appellee, but whether or not one of its agents later stated to appellee that appellant's physician was treating him is in dispute. The evidence that Dr. Threlkeld was employed by the company to take or continue in charge of the case is slight and unsatisfactory, but, for the purposes of this opinion, we will assume that he was so employed.

Appellant relies upon a number of grounds for a reversal of the judgment, but, in view of our conclusion that there is no evidence tending to show that the company failed to exercise ordinary care in the selection of a physician to treat the appellee, conceding for the purpose of argument that it did select Dr. Threlkeld, we deem it unnecessary to discuss or determine any other question involved.

The evidence conclusively shows that Dr. Jaudon, who was employed by the company to treat its injured employees, was a physician and surgeon of long experience and thoroughly competent and skilled. Dr. Threlkeld was an associate in Dr. Jaudon's office, but had been in Miami only a few months before appellee was injured. He had graduated in 1912 from a recognized medical school, and had practiced his profession in Kentucky for a number of years before going to Miami. A number of witnesses, including physicians, testified that he was recognized both in Kentucky, where he had practiced, and in Miami, Fla., as a competent and reputable physician.

It is insisted for appellee that it is not shown that he was a skilled surgeon, but Dr. Jaudon and other physicians testified that he was qualified to reduce a fracture such as appellee sustained, and it was shown that he had reduced a great number of fractures. He was associated with Dr. Jaudon, who was recognized as one of the leading surgeons and physicians in Miami. There is no evidence tending to show that at the time he treated appellee he was incompetent, but it is insisted for appellee that it may be inferred from the results of the treatment in this case that he was incompetent. This does not follow, since a competent and skilled physician and surgeon may be guilty of negligence and malpractice in a single case without losing his reputation of being competent. However, the liability of appellant must rest upon what it knew, or by the exercise of ordinary care should have known, at the time the physician was employed. There are no facts disclosed that tend to show that the appellant knew, or had any reason to suspect, that Dr. Threlkeld was incompetent or unskillful.

Where a master employs a physician for the benefit of its employees and without profit to itself, it is not liable for the physician's malpractice in case it exercises reasonable care in the selection and retention of a competent physician. The general rule is that, where a master voluntarily assumes to provide medical service to its employees, such master is only bound to exercise reasonable care and diligence in the selection of a physician, and when this duty is properly exercised, its liability ceases, and it is not liable for the subsequent malpractice or negligence of the physician so employed. Ballard v. Chesapeake & Ohio Railway Co., 144 Ky. 476, 139 S. W. 771; Black Mountain Corporation v. Thomas, 218 Ky. 497, 291 S. W. 737; Illinois C. R. Co. v. Buchanan, 126 Ky. 288, 103 S. W. 272, 31 Ky. Law Rep. 722, 11 L. R. A. (N. S.) 711; Louisville & N. R. Co., v. Foard, 104 Ky. 456, 47 S. W. 342, 20 Ky. Law Rep. 646.

Authorities from other jurisdictions to the same effect are James v. Yazoo & Mississippi V. R. Co., (Miss.) 121 So. 819; Illinois Central Railway Co. v. Moodie (C. C. A.) 23 F. (2d) 902; Parsons v. Yolande Coal & Coke Co., 206 Ala. 642, 91 So. 493; Smith v. Buckeye Cotton Oil Co., 139 Ark. 32, 212 S. W. 88; Borgeas v. Oregon Short Line R. Co., 73 Mont. 407, 236 P. 1069; Stage v. Michigan Central R. Co., 199 App. Div. 675, 191 N. Y. S.

824; Virginia Iron, Coal & Coke Co. v. Odle's Adm'r, 128 Va. 280, 105 S. E. 107; Engirbritson v. Tri-State Cedar Co., 91 Wash. 279, 157 P. 677; Quinn v. Railroad, 94 Tenn, 713, 30 S. W. 1036, 28 L. R. A. 552, 45 Am. St. Rep. 767.

In Ballard v. Chesapeake & Ohio Railway Co., supra, it was said:

> "Before liability attaches to the person furnishing a physician to render gratuitous service, there must be some evidence showing the existence of two things; First, negligence or malpractice on the part of the physician in the treatment of the case under his control; and, second, that the person furnishing the physician failed to exercise reasonable care to select a competent and skillful physician, or after he knew, or could by the exercise of reasonable care have known, of his unfitness or incompetency, retained him. If there is a failure of proof on either of these propositions, the person seeking a recovery against the person furnishing the physician must fail."

And this is the rule in this state whether the master gratuitously performs this service or is under duty to do so. Ballard v. C. & O. R. Co., supra.; Troutman's Adm'x v. L. & N. R. Co., 179 Ky. 145, 200 S. W. 488.

The rule is thus stated in 21 R. C. L. p. 396, sec. 40:

> "But where one is under a contractual or statutory duty to furnish to another medical or surgical aid the authorities are unanimous in support of the conclusion that if he acts in good faith and with reasonable care in the selection of a physician or surgeon , and has no knowledge of incompetency or lack of skill or want of ability on the part of the person employed, but selects an authorized physician in good standing in his profession, he has filled the full measure of his contractual or statutory duty and cannot be held liable for any want of skill on the part of the person employed. In such a case it seems that the duty would be fulfilled by furnishing to the patient an independent contractor and that the physician will be held to be such."

The physician employed by the company to render professional services to appellee was not the company's

servant or agent and the rule of respondeat superior does not apply. The employer has no control over the physician except the right to discharge him. It may not direct him as to the mode of treatment of the patient.

We do not mean to be understood that the record shows that Dr. Threlkeld was guilty of negligence. A number of physicians introduced by appellee testified that the plaster cast was improperly applied, but other physicians testifying for appellant stated that under the circumstances it was put upon appellee's leg in a proper manner. There was probably sufficient conflict in the evidence to authorize a submission of the case to the jury had Dr. Threlkeld been the defendant in a malpractice suit, but, as we have seen, whether or not he is guilty of malpractice is immaterial so far as the liability of appellant is concerned, if it exercised reasonable care in selecting him to treat appellee. As there was no evidence tending to show that appellant failed to exercise such care, its motion for a directed verdict should have been sustained.

Judgment reversed, with directions to grant appellant a new trial.