VESEL, APPELLANT, *v.* JARDINE MINING CO., RESPONDENT.

(No. 7,972.)

(Submitted October 7, 1939. Decided February 14, 1940.)

[100 Pac. (2d) 75.]

*Mr. S. C. Ford* and *Mr. Sam D. Goza, Jr.,* for Appellant, submitted an original and a reply brief and argued the cause orally.

*Mr. Clarence E. Wohl,* for Respondent, submitted a brief and argued the cause orally.

HONORABLE J. E. ROCKWOOD, District Judge, sitting in place of MR. CHIEF JUSTICE JOHNSON, disqualified, delivered the opinion of the court.

This action was brought by the appellant against respondent, Jardine Mining Company, a duly organized and existing corporation of the state of Montana, claiming damages by reason of permanent injuries alleged to have been suffered by the negligent treatment of his right eye by respondent and another at Jardine, in Park county, Montana.

Vesel's amended complaint was filed October 7, 1938. A motion to strike certain allegations from the complaint was denied by the lower court. On February 20, 1939, respondent filed a demurrer which was sustained by the lower court upon which a

judgment of dismissal was entered. The appellant prosecutes this appeal from the judgment of dismissal.

The complaint discloses the following facts: On or about June 2, 1936, appellant was employed by respondent in a hazardous occupation as a miner, in a mine operated and conducted by respondent at Jardine, in Park county, Montana. On that date appellant was operating a drill in a stope of respondent's mine, at which time and place a fragment of steel was knocked or chipped from the drill and struck appellant in the right eye. He continued his employment for about an hour, but his eye became painful and inflamed so that it was necessary for him to quit his work before the end of the day's shift. He then reported his injury to respondent's foreman, who directed him to report his injury to the main office of the respondent. This appellant did. That upon his reporting his injury to the respondent, the respondent then voluntarily and gratuitously assumed to render medical aid and attention to appellant. It is alleged that appellant was directed and taken by respondent to one Mrs. M. O. Davison for examination and treatment; that the respondent acted in violation of its duty by sending appellant to Mrs. Davison; that respondent knew or should have known that Mrs. Davison was not qualified or competent to furnish appellant with the medical care and treatment required by the injury to appellant's eye, and that respondent knew or should have known that to cause appellant to be treated and cared for by an unskilled, incompetent person would result in aggravation and additional injury to the eye of appellant. It is also alleged that Mrs. M. O. Davison then and there took a piece of cotton and rubbed it over and across the injured eyeball of appellant and negligently pressed the steel fragment beneath the surface of the eyeball so that it was not visible from outward inspection, and could not be felt by appellant's eyelid. He then alleges that he went to Mrs. Davison for treatment until July 12, 1936; that from time to time after the injury until July 12, 1936, Mrs. Davison told appellant there was nothing the matter with his eye, that it did not need medical attention and it was not necessary to consult a physician or surgeon, and that the eye would

be "all right" shortly; that he advised Mrs. Davison he could see black spots in his right eye, but she advised him the black spots would soon disappear. Appellant further alleges that he continued his employment relying upon the advice of Mrs. M. O. Davison until about July 1, 1937, when his right eye became discolored and the vision impaired; that he then consulted physicians and surgeons including the Mayo Clinic at Rochester, Minnesota, and was advised that the piece of steel was imbedded in the back of the eye; that an operation to remove the steel was attempted but failed; that he has lost the sight of his right eye and the sight of his left eye is endangered; that all the injuries of appellant were caused by the negligence and carelessness of respondent in causing appellant to be treated by an unskilled, incompetent person after voluntarily and gratuitously assuming on June 2, 1936, to render medical aid to appellant.

It is then alleged by appellant that he is a miner by occupation and not equipped nor able to follow any other gainful occupation and by reason of his injury is now totally and permanently disabled. That on and prior to June 2, 1936, appellant and respondent had elected to be and were bound by the Workmen's Compensation Act of the state of Montana (Rev. Codes 1935, secs. 2816 et seq.); that respondent maintained near its said mine a first aid station in charge of one Mrs. M. O. Davison in which the employees of respondent, who were injured in the course of their employment, were treated for such injuries by Mrs. Davison at the direction of the respondent.

The appellant assigns specification of errors:

(a) The court erred in making and entering the order sustaining the demurrer of respondent; and

(b) The court erred in making and entering the judgment of dismissal.

Appellant urges that his action for damages arises out of the negligence of the respondent subsequent to the accident. He makes no attempt to secure damages for the original injury occasioned by the industrial accident, but seeks damages for the injury sustained because of the negligence of respondent subsequent to the industrial accident.

Contra, the respondent maintains that the provisions of the Workmen's Compensation Act are exclusive of every cause of action except those saved by the Act, and that appellant's cause is not so saved, that appellant's present physical condition is due to an aggravation of an injury that arises out of and in the course of his employment which injury was compensable under the Workmen's Compensation Act, and that appellant is barred by the provisions of such Act from bringing an independent action against respondent, although the aggravation of the industrial injury was due to incompetent medical attention and treatment supplied by respondent.

Section 2839, Revised Codes 1935, reads in part as follows: "Where both the employer and employee have elected to come under this Act, the provisions of this Act shall be exclusive, and such election shall be held to be a surrender by such employer and such employee, as between themselves, of their right to any other method, form or kind of compensation, or determination thereof, or to any other compensation, or kind of determination thereof, or cause of action, action at law, suit in equity, or * * * common-law right of remedy, or proceeding whatever, for or on account of any personal injury to or death of such employee, except as such rights may be hereinafter specifically granted; and such election shall bind the employee himself, and in case of death shall bind his personal representative, and all persons having any right or claim to compensation for his injury or death, as well as the employer, and those conducting his business during liquidation, bankruptcy or insolvency. Provided, that whenever such employee shall receive an injury while performing the duties of his employment and such injury or injuries, so received by such employee, are caused by the act or omission of some persons or corporations other than his employer, and where the cause of such injury has no direct connection with his regular employment, and does not arise out of or necessarily follow as an incident thereof, then such employee, or in case of his death his heirs or personal representatives, shall, in addition to the right to receive compensation under the Workmen's Compensation Act, have a right to prosecute any cause of

action he may have for damages against such persons or corporations, causing such injury. In the event said employee shall prosecute an action for damages for or on account of such injuries so received, he shall not be deprived of his right to receive compensation but such compensation shall be received by him in addition to and independent of his right to bring action for such damages, provided, that in the event said employee, or in case of his death, his personal representative, shall bring such action, then the employer or insurance carrier paying such compensation shall be subrogated to the extent of one-half (½) of the gross amount received by such employee as compensation under the Workmen's Compensation Law,'' etc.

Respondent, in support of its position, relies on the case of *Clark* v. *Olson,* 96 Mont. 417, 31 Pac. (2d) 283, 286. In that case the plaintiff, a city employee, while working in the ordinary course of his duty as a street cleaner, was run over and severely injured by an automobile operated by the defendant, a third party. He received compensation under the Workmen's Compensation Act and then brought suit for damages for the negligence of the defendant, the third party. The court held that the Workmen's Compensation Act was exclusive, that he did not have an independent action against the third party tortfeasor and the only redress he had was under the Workmen's Compensation Act. The court said, quoting from *Peet* v. *Mills,* 76 Wash. 437, 136 Pac. 685, L. R. A. 1916A, 358, Ann. Cas. 1915D, 154: ''For these reasons we are of the opinion that the compensation provided by the Act in case of injury to any workman in any hazardous occupation was intended to be exclusive of every other remedy, and that all causes of action theretofore existing, except as they are saved by the provisos of the Act, are done away with.'' Respondent cites many cases from other jurisdictions in support of its position, some of which are hereinafter noted.

We do not believe respondent's position can be maintained under the rule laid down in the *Clark* v. *Olson Case,* supra, or in any of the cases relied on by respondent. The *Clark* v. *Olson Case* gives an able analysis of the Workmen's Compensation Act

before its amendment in 1933 pertaining to the facts set out therein, but the facts therein differ from the facts in the instant case, and its language has no application to the facts in the case at bar.

In the case of *Fitzpatrick* v. *Fidelity & Casualty Co. of New York*, 7 Cal. (2d) 230, 60 Pac. (2d) 276, 277, the court holds that "the aggravation of an industrial injury or the infliction of a new injury resulting from its treatment or examination is compensable under the provisions of the Workmen's Compensation Act and, therefore, within the exclusive cognizance of the Industrial Accident Commission." But the California Workmen's Compensation Act provides that the employee, upon the written request of the employer, must submit to examination by a physician selected and paid for by the employer.

Section 16 of the Workmen's Compensation Act, Henning's General Laws of California 1920, Hyatt, Part One, Third Edition, page 1557, reads as follows: "16. (a) Whenever the right to compensation under this Act would exist in favor of any employee, he shall, upon the written request of his employer, submit from time to time, as may be reasonable, to examination by a practicing physician, who shall be provided and paid for by the employer, and shall likewise submit to the examination from time to time by any physician selected by the commission or any member or referee thereof."

The respondent, in support of his contention that the Workmen's Compensation Act of Montana is exclusive, cites *Lincoln Park Coal & Brick Co.* v. *Industrial Commission*, 317 Ill. 302, 148 N. E. 79, 82, where it is said that the plaintiff was accidentally injured "in the course of and in the line of his employment." He was voluntarily paid compensation by the defendant. He returned to work but claimed he had only partly recovered and that he was entitled to further compensation. This was denied. Under the Workmen's Compensation Act the plaintiff was required to submit to examination by a doctor of the employer's selection, and if an injured employee refused to do so, his compensation would be suspended. The employee submitted to such examination during which he was severely burned

by the negligence of the company doctor. In holding for the plaintiff in error, the court said: "We believe it was never contemplated that the statute should authorize the employer to compel an examination by a doctor selected by the employer to determine whether the employee is suffering any incapacity from an injury for which the employer is admittedly liable, and if the doctor making the examination, through negligence or lack of skill, inflicts an injury which causes disability, the employer should not be liable under the statute."

In the case of *Ross* v. *Erickson Const. Co.*, 89 Wash. 634, 155 Pac. 153, 154, L. R. A. 1916F, 319, plaintiff brought action for the recovery of damages alleged to have been suffered by reason of the malpractice of defendant McGillivray. The plaintiff was employed by defendant, the Erickson Construction Company, and was injured in the course of his employment. He was later taken to the hospital conducted by McGillivray and remained under his treatment for some time. McGillivray was employed to do the surgical and hospital work for the construction company and was paid for his services out of a fund made up by deducting the sum of $1 from the monthly wages of the employees. After leaving the hospital the plaintiff made claim under the Industrial Insurance Law and accepted a final award. This action was thereafter brought against the defendants for the recovery of damages in the sum of $15,000. A trial upon the merits was had resulting in a verdict for plaintiff in the sum of $1. A new trial was granted. From the order granting a new trial the defendants appealed. Appellants set up in their answer and maintained throughout the trial that no recovery could be had against either of them for the reason that respondent Harry L. Ross had been compensated for all injuries resulting from the primary injury attributable thereto. The court said:

"At the time the Industrial Insurance Law was passed, one who had been injured by or through the negligence of an employer could maintain an action and recover all damages proximately traceable to the primary negligence. If the master assumed to collect fees out of the wage of the employé for the

purpose of maintaining medical and surgical treatment and hospital service without deriving any profit therefrom, he was bound to exercise due care in providing a proper place for treatment and in selecting physicians and surgeons. A breach of this duty made him liable in damages for the malpractice of the physician or surgeon. * * * Clearly the purpose of the Act was to end all litigation growing out of, incident to, or resulting from the primary injury, and in lieu thereof give to the workman one recovery in the way of certain compensation, and to make the charge upon the contributing industries alone.''

The court finally held that the Workmen's Compensation Act was exclusive and the damages would not lie against the defendants. It will be noted in this case that the employee, after having received the original injury, was taken to a hospital operated by the employer and which employer designated and hired the physician or surgeon to look after patients who were sent to it by the company, and that the company or employer deducted a portion of the wages of each employee for the purpose of maintaining said hospital and paying their physician or surgeon who looked after the patients sent to it by said employer.

In the case of *Brown* v. *Sinclair Refining Co.*, 86 Okl. 143, 206 Pac. 1042, the plaintiff, while in the employ of defendant, was engaged in painting a tank belonging to the defendant and while so engaged fell from his scaffold on which he was working, resulting in injuries to his left shoulder after which he was placed in a hospital in the city of Cushing. The defendant employed Dr. H. C. Manning to render medical aid and surgical treatment to the plaintiff. Thereafter the defendant, through its insurance carrier, paid the physician, the hospital bill, ambulance service, drug bill and nursing bill. The plaintiff filed his claim for compensation with the State Industrial Commission and the defendant through its insurance carrier paid the plaintiff various amounts at different times, and on December 10, 1916, paid the plaintiff the sum of $250.68 in full settlement of any disability thereafter to accrue which settlement was duly approved

by the State Industrial Commission. Later the plaintiff instituted action against the defendant seeking damages resulting from the negligence of the physician so employed to exercise reasonable and ordinary care in examining the injured shoulder of the plaintiff in order to ascertain the extent of the injury and failing to properly set or relocate the joints of the shoulder, alleging as a result of such neglect his shoulder became deformed, causing him total loss of his left arm and shoulder, causing paralysis therefrom. Judgment was rendered for the defendant in the lower court and on appeal to the supreme court the judgment was affirmed, thereby holding that the Workmen's Compensation Act was exclusive. But as noted above, the medical aid and surgical treatment to the plaintiff was rendered by a doctor employed by the defendant.

Respondent contends with much vigor that the present physical condition of appellant is the result of an industrial accident and that the negligence of respondent and Mrs. Davison was not the proximate cause of the injury for which any action lies but such accident was an aggravation of the original or industrial injury. Many cases have been cited by respondent in support of this contention, but a careful examination of these authorities discloses, as shown by some of the cases heretofore referred to, that they are decisions from jurisdictions where the Compensation Act requires the employer to furnish medical aid and attention and the employee to submit himself to such medical attention and examination or where he submits to the employer's selected physician or surgeon.

It is alleged in the complaint that respondent voluntarily and gratuitously assumed to undertake to furnish medical aid and attention to the appellant and that when respondent did so voluntarily and gratuitously assume to render medical aid and attention to appellant, it then became and was the duty of respondent to use reasonable care and diligence in the selection of a physician or surgeon or competent person to render medical care and assistance of a kind and character designed to cure and relieve the condition of appellant's right eye. Appellant claims that the negligence for which respondent is liable is, that

in causing appellant to have this injured eye treated by a person not competent to do so and causing the incompetent person ▊ to render her services to appellant. The law seems to be well settled that where, in the absence of a statute or contractual obligation, a master undertakes gratuitously to furnish medical attention to an employee or servant, he is bound to exercise reasonable care in the selection of a competent physician, and if, through his failure to exercise such care and diligence, the physician or surgeon selected is incompetent and unskillful and by reason of such unskillful treatment the employee or servant is injured, the employer is liable. (*Crawford* v. *Davis*, 136 S. C. 95, 134 S. E. 247; *Western Union Tel. Co.* v. *Mason*, 232 Ky. 237, 22 S. W. (2d) 602.)

In the case of *Mueller* v. *Winston Bros.*, 165 Wash. 130, 4 Pac. (2d) 854, 857, the court said: "While independent of a contract, no duty rests upon a master to furnish his servants with medical and surgical treatment, yet, if he undertakes to furnish such treatment, the law imposes upon him the duty to use reasonable care and diligence in engaging the services of a competent and skillful physician and surgeon for that purpose. And if, through his failure to exercise such care and diligence, the physician employed is incompetent and unskillful, and through such incompetency or lack of skill in the treatment of the servant injures him, the law holds the company responsible for its failure to discharge the legal duty thus imposed upon it. Such liability rests upon a failure to discharge a duty imposed by law, and is independent of any duty arising from a contract."

There was no duty imposed by statute or contractual obligation upon the respondent to render medical care or attention to appellant, but once having gratuitously assumed to render such services, respondent was bound to the exercise of reasonable care in the performance of the services so voluntarily assumed. When the respondent assumed gratuitously the obligation to give medical care and services to appellant it then became its duty to use reasonable care in the selection of a competent physician or surgeon or other competent or qualified person to render the kind of services and attention to the appellant's eye that

the same demanded. (*Croghan* v. *Schwarzenbach*, 81 N. J. L. 244, 79 Atl. 1027; *Karabalis* v. *E. I. DuPont*, 129 Va. 151, 105 S. E. 755; *Crawford* v. *Davis*, 136 S. C. 95, 134 S. E. 247; *Western Union Tel. Co.* v. *Mason*, 232 Ky. 237, 22 S. W. (2d) 602; *Hamilton* v. *Standard Oil Co.*, 323 Mo. 531, 19 S. W. (2d) 679; *Tullgren* v. *Amoskeag Mfg. Co.*, 82 N. H. 268, 133 Atl. 4, 46 A. L. R. 380; *Kirwan* v. *Foos*, 248 N. Y. 604, 162 N. E. 542; Id., 221 App. Div. 858, 224 N. Y. Supp. 831.)

In the case of *Troutman's Admx.* v. *Louisville & N. R. Co.*, 179 Ky. 145, 200 S. W. 488–490, 492, the court has this to say: "We are also of the opinion that the same measure of duty and care exists when the company undertakes to assume control of the case and take charge of the injured employé, although under the conditions present at the time it might not have been under any duty to furnish such medical aid or attention, as would exist in a state of case in which in the first instance it would have been under such duty, because the voluntary assumption of an unrequired burden may impose the same obligations as to the assumption of a required duty."

In the case of *Smith* v. *Mallinckrodt Chemical Works*, 212 Mo. App. 158, 251 S. W. 155, 157, plaintiff sought to recover damages for an injury to her eye sustained by reason of improper treatment by an employee of the defendant. In affirming judgment for plaintiff the court said: "Granting Dr. Rohlfing's negligence does it follow that the doctrine of *respondeat superior* exists under the circumstances between the defendant company and Dr. Rohlfing, rendering such company liable for his negligent act? There can be no question but that he was employed as a clerk and was in the general employ of the defendant as such, but that on account of his previous medical experience the habit and custom arose, which was known to the company, through which his services as a doctor were used by the company in treating its employees. While he was not employed as a doctor, he was used as such to the knowledge of the company, who through him undertook to furnish medical attendance to its employees. While no charge was made for such service and there was no obligation on the defendant company to furnish such ser-

vice, it did undertake to do so, and by reason of such fact a duty arose towards such employees. It was certainly the duty of the defendant to use reasonable care in selecting a reasonably skilled physician to perform the service, and for a violation of such duty defendant would be liable. There was no contention here that defendant did not exercise due care in selecting Dr. Rohlfing to perform the service as a physician, but plaintiff seeks to hold the defendant liable for the manner and mode in which Dr. Rohlfing performed such service; in other words, his act of malpractice in improperly diagnosing plaintiff's ailment."

The duty to use reasonable care in the rendering of the service and attention to appellant by respondent arose not from any right to receive the service and attention but from the relation between the parties which the service makes. In the case of *Edwin Tullgren, Administrator,* v. *Amoskeag Mfg. Co.,* 82 N. H. 268, 133 Atl. 4, 6, 46 A. L. R. 380–385, voluntary services were offered to and accepted by a sick person in the employ of the defendant, and in passing on the negligence of the servant of the defendant in rendering proper care to her, the court said: "The service being assumed, the plaintiff was entitled to receive due care in being taken home, not only in means, but in manner as well. It was important that she should be taken home in safety, and care in her travel included the conduct of the travel as well as the arrangements for it." To like effect, see *Ellen Kirwan* v. *Rosalie Foos, as Executrix of Fergusson W. Foos, Deceased,* 248 N. Y. 604, 162 N. E. 542.

In the case of *Carey* v. *Davis,* 190 Iowa, 720, 180 N. W. 889, 892, 12 A. L. R. 904, it was alleged that plaintiff was in the employment of defendant as a farm laborer and while so at work for and under the direction of defendants in the excavation of a gravel pit, he became overheated and fell in a faint or fit of unconsciousness and having partially recovered therefrom and resuming work he again suffered an attack of that nature, and while in that condition the defendants caused him to be removed to a wagon box near the place where he had been working and left him there in an even more exposed condition unattended and without care or protection for a period of hours until plaintiff

had recovered sufficiently to make his own way home. He charged defendants with negligence in failing to give him reasonable care in his sick and helpless condition and aggravating his suffering by placing him in a wagon box exposing him to the rays of the sun and to the effect of weather conditions whereby he became sick and confined to his bed and had been wholly incapacitated for labor. In reviewing this case the court said: "It is argued in his behalf that even if it is held that defendants would otherwise not be liable, yet, having assumed to pick him up in his unconscious condition and remove him from the place where he had fallen, it then became their duty to use reasonable care in so doing not to aggravate his misfortune, and for failure in this respect with resulting injury to him an action for damages will lie. This proposition is quite in accord with the reasons and principles which underlie the law of negligence. One person seeing another in distress may or may not be under legal obligation to afford him relief, but, if he does undertake it, he is, of course, bound to act with reasonable prudence and care to the end that, if his effort be unavailing, it shall at least not operate to increase the injury which he seeks to alleviate." (See, also, *Pedigo & Pedigo* v. *Croom*, (Tex. Civ. App.) 37 S. W. (2d) 1074; *Hoffman* v. *Houston Clinic*, (Tex. Civ. App.) 41 S. W. (2d) 134.)

It is contended by appellant that his action is not for damages for injuries arising out of and in the course of his employment, but that his action is one for damages for injuries by him suffered by reason of the negligent treatment received by him from respondent and Mrs. Davison. It is his contention that proper treatment of his injury would have resulted in the removal of the fragment of steel without permanent injury to his sight and that the loss of his eyesight can only be attributed to the negligence of respondent and not to the original injury.

In the case of *Ruth* v. *Witherspoon-Englar Co.*, 98 Kan. 179, 157 Pac. 403, L. R. A. 1916E, 1201, the court considered a cause of action similar to that sought to be established by appellant. The plaintiff recovered a judgment for $4,520 against the Witherspoon-Englar Co. under the Workmen's Compensation

Act and it appealed. The court said: "The amount of the judgment implied a finding of total disability for the full period of eight years. The principal contention of the defendant is that such a finding was not warranted because, even conceding that the plaintiff is now totally unable to perform labor and that this condition will continue for the period named, the evidence shows that the permanent character of his incapacity is actually the result, *not of the injury received while working for the defendant, but of improper surgical treatment.* * * * The matter is not confused by the need of determining what results might have been anticipated, or by any refined distinctions between proximate and remote causes; for whether and to what extent disability in such a case as the present has been increased by want of proper surgical care admits of ascertainment with reasonable definiteness and certainty. If it should be proved here, for instance, that the whole effects of the plaintiff's injury would under proper treatment have disappeared within a year, that would obviously be the limit of the period for which he could receive compensation in this action. His judgment here could not be increased by the fact that through the incompetent or negligent handling of the case by physicians a disability which would otherwise have been merely temporary was rendered permanent. (*Della Rocca* v. *Stanley Jones & Co.*, (1914) W. C. & Ins. Rep. 33, annotated in 6 N. C. C. A. 624.) Even if circumstances had been shown sufficient to charge the defendant with responsibility for the fault of the physicians, the rule would not be altered; for liability under the Compensation Act cannot be made to depend upon the degree of care exercised. A part of the loss occasioned by an accidental injury to a workman is cast upon the employer, not as reparation for wrongdoing, but on the theory that it should be treated as a part of the ordinary expense of operation. So much of an employé's incapacity as is the direct result of unskillful medical treatment does not arise 'out of and in the course of his employment' within the meaning of that phrase as used in the statute. (Laws 1911, c. 218, sec. 1.) For that part of his injury his remedy is against the persons answerable therefor under the general law of negligence, whether

or not his employer be of the number. It was doubtless desirable that the malpractice issue should have been distinctly presented in the pleadings, but in any event it was incumbent on the plaintiff to show what degree and duration of incapacity was the direct result of the original injury received in the course of his work, without the intervention of an independent cause.''

In the case of *Ellamar Min. Co. of Alaska* v. *Possus* (Circuit Court of Appeals, 9th Circuit, January 7, 1918), 247 Fed. 420, 422, the court in commenting on the phrase ''arising out of and in the course of employment'' said: ''We are of the opinion that under the Act the plaintiff could not recover for aggravation to his injuries as pleaded in his second count. The Act limits recovery thereunder to cases of death or injury arising 'out of and in the course of employment.' That phrase is one that is commonly used in workmen's compensation acts, and its meaning has been determined in numerous decisions. 'This phrase embraces only those accidents which happen to a servant while he is engaged in the discharge of some function or duty which he is authorized to undertake, and which is calculated to further, directly or indirectly, the master's business.' (5 Labatt's Master and Servant, sec. 1806.) An injury arises out of the employment if there is a causal connection between the working conditions and the injury, and it must be possible to trace the injury to the nature of the employer's work, or to the risks to which the employer's business exposes the employé.''

Again the principle contended for by appellant in the case at bar is strongly confirmed in the case of *Ashby* v. *Davis Coal & Coke Co.*, 95 W. Va. 372, 121 S. E. 174, 33 A. L. R. 1201. The action in this case was instituted by an injured employee. In affirming the right of the employee to recover for damages due to negligent medical treatment, the court said: ''Plaintiff further alleges that these acts on the part of defendant's physician at Dartmore were the result of incompetency and lack of skill, and were done with willful intent to prevent plaintiff from receiving proper treatment for his said injuries, and that as a result thereof he was kept for a long space of time from ascer-

taining to what extent he had been injured, and has become permanently injured, and is suffering constantly and will continue to suffer the rest of his life much pain and misery; all of which was caused by the negligence of defendant to employ a person of suitable and proper skill to treat his said injuries; by reason of which he has become damaged in the sum of $10,000, for which he brings his suit.'' The court further says: ''Plaintiff does not sue for damages resulting from injuries sustained while working in defendant's mine, but for the alleged permanency of his injuries as a result of the neglect or wrongful act of defendant's physician, whom, it is alleged the defendant knew to be incompetent and unskillful at the time.''

Quoting from 28 Ruling Case Law, pages 882, 883, section 119, it is said: ''If for any reason the Compensation Act does not embrace the case of an employee who has sustained injury by reason of conduct on the part of his employer, an action may be maintained at law independently of the provisions of the statute. * * * Under some of the Acts it would seem that an action at law may be maintained for certain consequences of calamity, which are held not to be compensable by reason of the fact that they are not the 'proximate result' of the occurrence; as, for example, incapacity attributable to improper medical or surgical treatment provided by the employer.''

In the case of *Borgeas* v. *Oregon etc. R. Co.*, 73 Mont. 407, 415, 236 Pac. 1069, 1072, the court says: ''If the defendant company, being in duty bound to furnish skilled and careful surgeons, by reason of lack of reasonable care in its selection, or the retention of a surgeon after it had been brought to the attention of the officers of the company that such a one through lack of skill or by reason of personal habits has become unfit to serve in that capacity, provides an injured employé with such unskillful or careless surgeon, then it would be liable for the carelessness or malpractice of the surgeon, and the allegation of damage therefrom may properly appear in the complaint. (4 Thompson on Negligence, sec. 3842; *Wabash R. Co.* v. *Kelley*, 153 Ind. 119, 52 N. E. 152, 54 N. E. 752),'' which supports the principle contended for by appellant in the case at bar.

Nothing can be found in the Workmen's Compensation Act that would deprive the appellant of the right to bring this action. An examination of other provisions of the Act leads to but one conclusion and that is that it is intended to apply only to injuries sustained by an employee in the course of his employment, and as to a person injured "in the course of his employment," the Workmen's Compensation Act is exclusive unless falling under an exception provided by the Act. It was never intended or contemplated that an employer could hide behind the Compensation Act and thereby escape liability from his negligent or malicious acts toward an employee for an act having no connection with the course of employment. The contention of the respondent, that there is no liability at common law because of the Workmen's Compensation Act, is not predicated on negligence but only upon injuries arising out of and in the course of employment. Section 2836, Revised Codes of 1935 provides:

"In an action to recover damages for personal injuries sustained by an employee in the course of his employment, or for death resulting from personal injuries so sustained, it shall not be a defense:

"(1) That the employee was negligent, unless such negligence was wilful;

"(2) That the injury was caused by the negligence of a fellow employee;

"(3) That the employee had assumed the risks inherent in, incident to, or arising out of his employment, or arising from the failure of the employer to provide and maintain a reasonably safe place to work, or reasonably safe tools or appliances."

The injuries sustained by appellant, according to the complaint, were out of the course of the employment, were inflicted by negligent treatment; that one of the joint tort-feasors was respondent is of no consequence in so far as the Workmen's Compensation Act is concerned. Appellant was not an employee of respondent after hours had elapsed and while away from the plant or premises of respondent.

In the case of *Palko* v. *Taylor-McCoy Coal & Coke Co.*, 289 Pa. 401, 137 Atl. 625, 629, the supreme court of Pennsylvania in discussing the phrase "course of employment" said: " 'Course of employment' does not cover all the time during the day; it does not extend to intervals of time between regular working hours, nor to the interval between the regular working hours and a new, additional, or different work to be undertaken at another period of time, in which intervals the employee leaves the premises. We do not pass on the question which might arise where the employee remains on the premises. The term 'course of employment' does include the intervals of time for leisure interspersed in regular working hours for rest or refreshment on the premises (*Dzikowska* v. *Superior Steel Co.*, 259 Pa. 578, 103 Atl. 351, L. R. A. 1918F, 888), or to minister to personal comfort or relieve nature (*Ferri* v. *Lenni Quarry Co.*, 266 Pa. 264, 109 Atl. 845), but it does not cover the time going to or from work after or before regular or extra working hours. (*Maguire* v. *James Lees & Sons,* supra [273 Pa. 85, 116 Atl. 679] ; *Shickley* v. *Philadelphia & Reading Coal & Iron Co.*, 274 Pa. 360, 118 Atl. 255; *Rotolo* v. *Punxsutawney Furnace Co.*, 277 Pa. 70, 120 Atl. 704.) "

The Act does not require respondent to render medical aid or attention to appellant, but once having voluntarily and gratuitously assumed to render medical aid and assistance and having done so, respondent is held to the same measure of duty as any other person in the same situation. (See 18 R. C. L., p. 603, sec. 103; *Crawford* v. *Davis*, 136 S. C. 95, 134 S. E. 247; *Carey* v. *Davis et al.*, 190 Iowa, 720, 180 N. W. 889, 12 A. L. R. 904.)

In the case of *Koppang* v. *Sevier*, 101 Mont. 234, 53 Pac. (2d) 455, 459, the court said in part: " * * * that an important feature of the compensation plan is found in the fact that industry should care for its own man power wrecked by reason of laboring in the industry, just as it must bear the expense of wreckage of machinery used in the same manner (see *Meznarich* v. *Republic Coal Co.* [101 Mont. 78], 53 Pac. (2d) 82, decided December 12, 1935), all of which we heartily approve; but that

does not carry us to a point where we must say that industry is always required to stand the expense of wreckage by independent tort-feasors, or that workmen under the Act must be held to waive and forego causes of action arising out of something entirely foreign to the risk involved in their ordinary duties in order to avail themselves of the benefits of the Workmen's Compensation Act. Fortunately the legislature was possessed of the power to control that situation, as was pointed out in the *Clark* v. *Olson* case; but unfortunately, as we then suggested, the relief did not come soon enough to aid Clark. Here such relief is not only appropriate, but timely.''

At the time appellant sustained the injury to his right eye he was not employed by or working for respondent. He was not on the premises of respondent, but he was at a first aid station conducted and operated by respondent some distance from respondent's premises, in the charge of Mrs. Davison, who, at which place, rendered the services to and treated appellant's eye. Under the circumstances, can it be said that the injury is an "industrial injury", "arising out of" and "in the course of his employment"? It must be apparent that appellant's injury did not arise out of and in the course of his employment. These phrases have received consideration by many courts including this court. In *Landeen* v. *Toole County Refining Co.*, 85 Mont. 41, 277 Pac. 615, 619, this court said:

"In order for claimants to recover, the facts must disclose that the injuries resulted from an *industrial accident, arising out of and in the course of their employment*. As these terms are used conjunctively, and not disjunctively, in the statute, unless all three necessary elements are proved by a preponderance of the evidence, no liability rests upon the employer to pay compensation. (*Wiggins* v. *Industrial Accident Board*, 54 Mont. 355, 170 Pac. 9, Ann. Cas. 1918E, 1164, L. R. A. 1918F, 932; *Wirta* v. *North Butte Mining Co.*, 64 Mont. 279, 210 Pac. 332, 30 A. L. R. 964.)

"The explosion, happening as it did, was an industrial accident. (*Nicholson* v. *Roundup Coal Min. Co.*, 79 Mont. 358, 257 Pac. 270.) As this court, speaking through Mr. Justice Mat-

thews, said in the case last cited, the phrase 'injury arising out of and in the course of his employment' means that the injury or death resulted from an industrial accident arising out of and in the course of his employment. The terms 'arising out of' and 'in the course of' are used conjunctively, and, in order to satisfy the statute, both conditions must concur. (*Wirta* v. *North Butte Min. Co.*, supra; *Herberson* v. *Great Falls Coal & Wood Co.*, 83 Mont. 527, 273 Pac. 294.) The term 'out of' points to the origin or cause of the accident, and is descriptive of the relation which the injury bears to the employment. (*Wiggins* v. *Industrial Accident Board*, supra.) It presupposes a causal connection between the employment and the injury. (*Larke* v. *John Hancock Mutual L. Ins. Co.*, 90 Conn. 303, 97 Atl. 320, L. R. A. 1916E, 584.) The term 'in the course of' refers to the time, place, and circumstances under which the accident took place; an accident arises in the course of the employment if it occurs while the employé is performing the duty which he is employed to perform (*In re McNicol*, 215 Mass. 497, 102 N. E. 697, L. R. A. 1916A, 306, note), or 'if it occurs while the employé is doing what a man so employed may reasonably do within a time during which he is employed, and at a place where he may reasonably be during that time' (*Bryant* v. *Fissell*, 84 N. J. L. 72, 86 Atl. 458, quoted in *Wirta* v. *North Butte Mining Co.*, supra.)'' (See *Rautio* v. *International Harvester Co.*, 180 Minn. 400, 231 N. W. 214; *Wilhelm* v. *Angell, Wilhelm & Shreve*, 252 Mich. 648, 234 N. W. 433; *Podgorski* v. *Kerwin*, 144 Minn. 313, 175 N. W. 694.)

These phrases, "arising out of" and "in the course of his employment" have received very careful consideration by the supreme court of Oregon, wherein it is said that the phrase " 'arising out of' and 'in the course of his employment' as used in the Workmen's Compensation Law should be given a broad and liberal construction." In the *Brady* v. *Oregon Lumber Co.* Case, 117 Or. 188, 243 Pac. 96, 99, 45 A. L. R. 812, quoting from Ann. Cas. 1918B, 769, the court said: ''To entitle a workman to an award of compensation under a Workmen's Compensation Act, his injuries must result from an accident both arising out

of and in the course of his employment. The two elements must coexist. They must be concurrent and simultaneous. The one without the other will not sustain an award. Yet the two are so entwined that they are usually considered together in the reported cases, and a discussion of one of them involves the other. * * * 'In the course of' points to the place and circumstances under which the accident takes place and the time when it occurred. In order to restrict beyond the reach of question the words 'in the course of the employment,' the words 'arising out of' were added, so that the proof of the one without the other will not bring a case within the Act. The term 'arising out of' in the Act points to the origin or cause of the injury. It presupposes a causal connection between the employment and the injury. (*Larke* v. *John Hancock Mut. L. Ins. Co.*, 90 Conn. 303, 97 Atl. 320, L. R. A. 1916E, 584.)''

Our own court has considered these phrases in the case of *Herberson* v. *Great Falls Wood & Coal Co.*, 83 Mont. 527, 273 Pac. 294, 296. In considering these phrases "arises out of his employment" and "in the course of his employment", the court said: "It is to be noted that the Act does not define the phrase 'arising out of the employment,' and, as for judicial definition, it is universally conceded that no comprehensive formula can be devised which will determine with certainty the application of this phrase. Each case must be decided upon its own fact features in the application of the law. The decisions of the courts attempting to apply this statutory restriction in the award of compensation are so numerous that it would take more time than we have at our disposal to review and consider them. The terms *'arising out of'* and, *'in the course of'* the employment are used conjunctively, and, in order to satisfy the statute, both conditions must be present. (*Wiggins* v. *Industrial Accident Board*, 54 Mont. 335, 170 Pac. 9, L. R. A. 1918F, 932, Ann. Cas. 1918E, 1164; *Wirta* v. *North Butte Min. Co.*, 64 Mont. 279, 210 Pac. 332, 30 A. L. R. 964.) The words 'in the course of an employment' refer to the time, place, and circumstances under which the accident took place, and an accident arises 'in the course of the employment' if it occurs while the employé

is performing a duty, imposed upon him by his employer, connected with his employment.''

In the case of *Isabelle* v. *J. H. Bode & Co.*, 215 App. Div. 184, 213 N. Y. Supp. 185, 186, in commenting on the phrase ''arising in the course of employment'' the supreme court of New York said:

''It is not sufficient to sustain an award that the employment occasioned the presence of the employee where the injury occurred. (*Matter of Scholtzhauer* v. *C. & L. Lunch Co.*, 233 N. Y. 12, 134 N. E. 701.) In that case the court said [referring to the injury]:

''The injury 'must have been received while the employee was doing the work for which he was employed, and in addition thereto such injury must be a natural incident to the work. It must be one of the risks connected with the employment, flowing therefrom as a natural consequence, and directly connected with the work. (*Matter of Heitz* v. *Ruppert*, 218 N. Y. 148, 112 N. E. 750, L. R. A. 1917A, 344).' '' To like effect, see *M. P. Gustafson Co.* v. *Industrial Com.*, 348 Ill. 11, 180 N. E. 567; *Atlas Linen Supply Co.* v. *Industrial Com.*, 348 Ill. 69, 180 N. E. 570.

It seems clear that the cause of action set up in the complaint for the injury sustained at the hands of Mrs. Davison is entirely separate and distinct from the primary, industrial injury to appellant's eye. The industrial injury arose out of and was in the course of his employment, and as to this injury the Workmen's Compensation Act was exclusive. But the new injury caused by Mrs. Davison was not an industrial injury, nor did appellant's new injury arise out of and in the course of his, appellant's, employment. Could the Workmen's Compensation Act be construed to cover the new injury? The Act does not require the employer to furnish medical aid, and there is no hospital contract between appellant and respondent. In jurisdictions where the Act requires the employer to furnish medical aid, or where the employee submits to the employer's selected physician or surgeon, it has been held that the Workmen's Compensation Act is exclusive, on the theory, it would seem, that if

the employer is bound to furnish medical aid, or the employee submits to the employer's selected physician, then the employer should be protected and the Compensation Fund should pay the employee for any additional or new injury sustained. In our opinion the Workmen's Compensation Act of Montana cannot be so construed.

It has been suggested that section 2909, Revised Codes, in effect condemns the alleged cause of action here. That section in substance provides that the employer shall not be liable for any act in connection with the treatment or malpractice in the treatment of any injuries sustained by an employee. This contention overlooks the gravamen of appellant's alleged cause of action. As above pointed out, the action is grounded upon negligence of the respondent in selecting and employing an unskilled and incompetent person to care for injured employees. The action is not based upon malpractice in any sense of the term. Appellant's recovery, if one is allowed, must rest upon proof of a want of care on the part of respondent in selecting the attendant. Proof of the acts of the attendant resulting in injuries will only become admissible to show that the negligence in employing an unskilled and incompetent attendant was the proximate cause of the aggravated injuries to appellant.

We therefore hold that under the facts alleged in the complaint, the Workmen's Compensation Act is not exclusive, and that the complaint states a cause of action.

The judgment is reversed and the cause remanded with directions to the trial court to overrule the demurrer and to grant leave to respondent to file answer to the complaint.

ASSOCIATE JUSTICES MORRIS, ANGSTMAN, ARNOLD and ERICKSON concur.