Tart, J.
Plaintiff’s assignment of error in this court describes her action as “a wife’s action for loss of’ consortium due to the defendant’s intentional, wrong *299 ful, and malicious act.” Defendant apparently concedes that there was such a cause or right of action in this state at common law. See Flandermeyer v. Cooper, 85 Ohio St., 327, 98 N. E., 102, 40 L. R. A. (N. S.), 360, Ann. Cas. 1913A, 983.
From the allegations of the petition, it is clear that the injury, for which the plaintiff seeks damages, resulted entirely from an occupational disease of her husband which was occasioned in the course of and arose out of his employment by the defendant.
Therefore, the question to be decided in this case is whether a wife may maintain an action against an Ohio employer who has complied with the Workmen’s Compensation Act of Ohio to recover damages for an alleged loss of consortium due to such employer’s intentional, wrongful and malicious act, where such loss of consortium has resulted from an occupational disease of her husband occasioned in the course of and arising out of his employment in Ohio by such employer.
Admittedly, the plaintiff was not an employee of the defendant or the dependent of a killed employee of the defendant; and, because and while her husband is still living, she cannot assert a claim for, or be eligible to receive, compensation under the Workmen’s Compensation Act.
For the purpose of this opinion, we will assume that a wife who brings such an action as that asserted by the plaintiff in her petition is suing in her own right for the breach of an independent duty owing to her, —in other words, that such right of action of the wife is one independent of any right of action which her husband may have by reason of the same wrongful conduct.
Section 35 of Article II of the Ohio Constitution, which became effective in 1924, reads in part:
“For the purpose of providing compensation to *300 workmen and their dependents, for death, injuries or occupational disease, occasioned in the course of such workmen’s employment, laws may be passed establishing a state fund to be created by compulsory contribution thereto by employers, and administered by the state, determining the terms and conditions upon which payment shall be made therefrom. Such compensation shall be in lieu, of all other rights to compensation, or damages, for such death, injuries, or occupational disease, and any employer who pays the premium or compensation provided by law, passed in accordance herewith, shall not be liable to respond in damages at common law or by statute for such death, injuries or occupational disease.” (Italics added.)
In 1923, this provision of the Constitution had been amended so as to add the portion set forth in italics in the above quotation in place of the following words:
“and taking away any or all rights of action or defenses from employees and employers; but no right of action shall be taken away from any employee when the injury, disease or death arises from failure of the employer to comply with any lawful requirement for the protection of the lives, health and safety of employees.”
Thereafter, in 1931, the General Assembly repealed Section 1465-76, General Code, reading in part:
“Rut where a personal injury is suffered by an employee, or where death results to an employee from personal injury while in the employ of an employer in the course of employment * * *, and in case such injury has arisen from the wilful act of such employer or any of such employer’s officers or agents, or from the failure of such employer or any of such employer’s officers or agents to comply with any lawful requirement for the protection of the lives and safety of employees, then in such event, nothing in this act contained shall affect the civil liability of such employer, *301 but such injured employee, or his legal representative in case death results from the injury, may, at his option, either claim compensation under this act or institute proceedings in the courts for his damages on account of such injury * * *.
¿ ¿ ^
“The term ‘wilful act,’ as employed in this section, shall be construed to mean an act done knowingly and purposely with the direct object of injuring another.”
These changes in the constitutional and statutory provisions relating to workmen’s compensation make it apparent that, insofar as provisions relating tO' workmen’s compensation bar suits against an employer, the fact, that an action is based upon “the defendant’s intentional, wrongful and malicious act,” does not result in a plaintiff having any greater rights to recovery than if such action had been based merely upon negligence of the defendant.
Plaintiff has referred to certain decisions which involved actions for damages resulting from injuries to an employee in addition to those injuries arising out of the employee’s employment. See Ashby v. Davis Coal & Coke Co., 95 W. Va., 372, 121 S. E., 174, 33 A. L. R., 1201; Vesel v. Jardine Mining Co., 110 Mont., 82, 100 P. (2d), 75. Such decisions are obviously not helpful in determining the question involved in the instant case.
It is contended that the precise question involved in the instant case was before this court in Calhoun v. Youngstown Pressed Steel Co., 132 Ohio St., 451, 8 N. E. (2d), 566, and that the decision there made requires a decision adverse to the plaintiff in the instant case. An examination of the unreported opinion of the Court of Appeals in that case does disclose that the Court of Appeals held that, because of Section 35, Article II of the Constitution, no right of action now exists in this state in favor of a husband for loss of *302 services and consortium of the wife resulting from injuries which she received while in the course of her employment and arising therefrom and for which she received compensation through the workmen’s compensation fund as provided by the Workmen’s Compensation Act. The order of this court, dismissing the appeal as of right “for the reason no debatable constitutional question is involved,” certainly would appear to be equivalent to a decision affirming that made by the Court of Appeals. However, because no other reason was given for the decision of this court in that case and that decision was concurred in by only four of the seven members of this court, we believe that it is appropriate to re-examine in the instant case the question which was there involved and decided. This would seem especially appropriate in view of the subsequent decision, of this court in Triff, Admx., v. Natl. Bronze & Aluminum Foundry Co., 135 Ohio St., 191, 20 N. E. (2d), 232, 121 A. L. R., 1131, overruling prior decisions of this court which undoubtedly called for the decision which this court made in the Calhoun case.
.Paragraph two of the syllabus in the Triff case reads:
“The right of action of an employee for the negligence of his employer directly resulting in a noncompensable occupational disease has not been taken away by Section 35, Article II of the Constitution of Ohio, or by Section 14.65-70, General Code.”
Section 1465-70, General Code, as effective May 26, 1939, about two months after the decision in the Triff case, was apparently then enacted for the purpose of abrogating the rule of law announced in the Triff case. This is apparent from a comparison of this section of the Code as it now reads with the section as it previously read. The previous wording of *303 the section is set forth in the Triff case at page 200. The section now reads:
“Employers who comply with the provisions of Section 1465-69 shall not be liable to respond in damages at common law or by statute, for any injury, disease or bodily condition, whether such injury, disease or bodily condition is compensable under this act or not, or for any death resulting from such injury, disease or bodily condition, of any employee, wherever occurring, during the period covered by such premium so paid into the state insurance fund, or during the interval of time in which such employer is permitted to pay such compensation direct to his injured or the dependents of his killed employees as herein provided.
“No action against an employer, who has complied with the provisions of Section 1465-69, to recover damages at common law or by statute for any injury, disease or bodily condition, or death resulting from an injury, disease or bodily condition, of an employee arising out of his employment by such employer shall be commenced after Í80 days after the effective date of this act.” (Emphasis added.)
In Weil, Admr., v. Taxicabs of Cincinnati, Inc. 139 Ohio St., 198, 39 N. E. (2d), 148, this court held that such a common-law cause of action against an employer, which accrued before the amendment of Section 1465-70 in May of 1939, would not be barred by that statute until 180 days after its effective date.
The allegations of plaintiff’s petition in the instant case indicate clearly that no common-law cause of action could have accrued to her prior to the effective date of the amendment of Section 1465-70, General Code.
However, any question, as to whether the immunity provisions of Section 35, Article II of the Constitution,, and of Section 1465-70, General Code, might be in *304 applicable to plaintiff’s claim by reason of the decision in the Triff case, has long ago been eliminated by the provisions in Section 1465-68o, General Code, for compensation to employees and the dependents of employees for the occupational disease of silicosis.
We do not see how it can be held that the plaintiff can assert her cause of action in the instant ease without disregarding the plain and ordinary meaning of the words used by the General Assembly when it amended Section 1465-70, General Code, in 1939.
Admittedly, the construction placed upon different language of statutory provisions of other jurisdictions may often be of doubtful value in the interpretation of our statutory provisions. However, because the language of our statutory provisions so clearly indicates the intention of the General Assembly to provide .against liability of the employer to anyone for “damages * * * for any injury, disease or bodily condition * * * of an employee arising out of his employment,” Pases from other jurisdictions, reaching the same conclusion as apparently indicated by our statutory provisions, are not without significance.
Courts'of last resort which have considered questions similar to the question involved in the instant case have reached a conclusion adverse to that contended for by the plaintiff in the instant case. McVey v. Chesapeake & Potomac Telephone Co., 103 W. Va., 519, 138 S. E., 97; Holder v. Elms Hotel Co., 338 Mo., 857, 92 S. W. (2d), 620, 104 A. L. R., 339. See Brickley v. Gulf Coast Construction Co., 153 Fla., 216, 14 So. (2d), 265.
The only contrary decision to which we have been referred and which we have been able to find is that in Hitaffer v. Argonne Co., Inc. (C. C. A., D. C. 1950), 183 F. (2d), 811 (certiorari denied, 340 U. S., 852, 95 L. Ed., 624, 71 S. Ct., 80).
The opinion in that case recognized “that the plain *305 and literal language” of the statutory provisions involved required a different decision from that rendered. The only authorities cited in support of the decision, rendered on the question similar to that, involved in the instant case, were two cases decided in the Second Circuit: Rich v. United States (C. C. A. 2), 177 F. (2d), 688, and The Tampico (W. D. N. Y. 1942), 45 F. Supp., 174.
Thirteen days before the decision in the Ritaffer case, the- Second Circuit Court of Appeals rendered a decision which appears to be entirely inconsistent with .that reached in the Hitaffer case: American Mutual Liability Ins. Co. v. Matthews, 182 F. (2d), 322.
The majority opinion by Swan, J., in the latter case points out that “by contract an employer may become bound to indemnify his promissee against liability resulting from improper performance of the work undertaken by the employer.” It refers to the Rich case, relied upon by the court in the Ritaffer case as one of the two authorities to sustain its- conclusion on the question similar to that involved in the instant case, as “such a case.” Other such cases are American Stevedores, Inc., v. Porello, 330 U. S., 446, 91 L. Ed., 1011, 67 S. Ct., 847; Westchester Lighting Co. v. Westchester County Small Estates Corp., 278 N. Y., 175, 15 N. E. (2d), 567; United States v. Arrow Stevedoring Co., 175 F. (2d), 329; Baugh v. Rogers, 24 Cal. (2d), 200, 148 P. (2d), 633, 152 A. L. R., 1043; American District Telegraph Co. v. Kittleson (contract implied in law), 179 F. (2d), 946. See Burris v. American Chicle Co., 120 F. (2d), 218.
In such cases the employer has undertaken by agreement to assume an obligation to indemnify, notwithstanding that the provisions of the statutes relative to workmen’s compensation would otherwise provide him with immunity from such an obligation. That immunity is obviously not of such a character that it *306 cannot be so waived. Standard Wholesale Phosphate & Acid Works, Inc., v. Rukert Terminals Corp. (Md.), 65 A. (2d), 304. This court recently recognized that a party might by contract be obligated to respond in damages to a workman’s employer on account of injuries to a workman, even where no such obligation would exist without such contractual agreement. See Midvale Coal Co. v. Cardox Corp., 152 Ohio St., 437, 89 N. E. (2d), 673.
With respect to cases where there is no such contractual agreement by the employer to indemnify, Swan, J., stated in the court’s opinion in the Matthews case:
“To impose a noncontractual duty of contribution on the employer is pro tanto to deprive him of the immunity which the statute grants him in exchange for his absolute, though limited, liability to secure compensation to his employees.”
The majority opinion in the Matthews case then points out that the reasons, used as the basis for the decision in The Tampico and similar decisions by other federal trial courts, did not require a decision in the Matthews case impairing the employer’s immunity from liability to others for injuries to his employee.
In a concurring opinion in the Matthews case, Judge Learned Hand said:
“I agree that the Longshoremen’s and Harbor Workers’ Compensation Act need not inevitably be construed to' include a release, not only from direct claims by employees, but from contribution to third persons from whom employees have recovered; and the reason why I think it should be so construed is that it has imposed upon employers an absolute, though limited, liability, in exchange for a release from the preceding unlimited liability, conditional upon negligence. The release should, I submit, have the same scope as the imposed liability, which extends as well *307 to injuries eaused by a joint wrong, as to those caused by the wrong of the employer alone. ’ ’
The decision in the Hitaffer case does not even mention the decisions contrary to those rendered in the Rich and The Tampico cases. In addition to state intermediate appellate and federal trial court decisions, those include Standard Wholesale Phosphate & Acid Works, Inc., v. Rukert Terminals Corp., supra, and Maio, Exrx., v. Fahs, 339 Pa., 180, 14 A. (2d), 105. Furthermore, the opinion in the Hitaffer case makes no reference to McVey v. Chesapeake & Potomac Telephone Co., supra; Holder v. Elms Hotel Co., supra; or Brickley v. Gulf Coast Construction Co., supra.
We do not believe that the authorities, relied upon in the opinion in the Hitaffer case, sustain the strained conclusion reached by the court in that case on the question, which is similar to the question involved in the instant case. Apart from those authorities, the only other reasons given in the opinion in the Hitaffer case for that conclusion, while they might properly be considered by a legislature in determining what meaning to express, should not justify a court in determining that the legislature expressed a meaning different from that which its language clearly indicates that it did express.
In the instant case, we prefer to apply to the facts the meaning clearly indicated by the words used by the General Assembly when it amended Section 1405-70, General Code, in 1939. It follows that the judgment of the Court of Appeals should be affirmed.

Judgment affirmed.

Stewart, Middleton, Matthias and Hart, JJ., concur.
Weygandt, C. J., and Zimmerman, J., concur in the judgment.