### CRAWFORD v. DAVIS, DIRECTOR GENERAL

#### (134 S. E., 247)

1. MASTER AND SERVANT.—Employer, furnishing medical treatment, is liable only for negligence in selection of physician, and not for negligence of person selected, if he have reasonable skill.

2. MASTER AND SERVANT.—Employer, undertaking care of injured employee, where no duty exists, is bound to same measure of care as if duty existed.

3. COURTS.—State Courts can apply Federal Employers' Liability Act (U. S. Comp. St. §§ 8657–8665) as well as Federal Courts.

4. COMMERCE.—Federal Employers' Liability Act (U. S. Comp. St., §§ 8657–8665), applies only when particular service in which employee is engaged is part of interstate commerce.

5. COMMERCE.—Act of railroad in choosing doctor to treat employee was purely intrastate matter, as respected application of Federal Employers' Liability Act (U. S. Comp St., §§ 8657–8665) to action for negligence in selecting incompetent physician.

6. MASTER AND SERVANT.—Question of railroad's negligence in selection of physician for treatment of injured section hand *held* for jury, whether case was within Federal Employers' Liability Act (U. S. Comp. St., §§ 8657–8665), or not.

7. ACTION.—Technical violation of right or an injury and a resultant damage are essential to liability, in civil action for damages.

8. TRIAL—CHARGE AFFECTING RAILROAD'S NEGLIGENCE IN SELECTION OF PHYSICIAN HELD NOT ERRONEOUS WHEN CONSTRUED WITH REMAINDER OF CHARGE.—Portions of charge affecting railroad's liability for negligence of physician employed to treat injured section hand when construed with remainder of charge *held* not erroneous, in action for negligent selection of physician.

9. TRIAL.—Charge must be taken and construed as a whole.

Before MEMMINGER, J., York, April, 1925. Affirmed.

Action by Tom Crawford against James C. Davis, Director General of Railroads, as agents, etc., under Section 206, of the Transportation Act of 1920. Judgment for plaintiff and defendant appeals.

The following is the complaint:

"The plaintiff, above named, complains and alleges:

"(1) That by an Act of Congress of the United States of America, approved on March 21, 1918, the management and control of all railroads, including the Southern Railway Company, a corporation organized and existing under the laws of the State of Virginia, was placed in the hands of a Director General of Railroads, and the defendant, James C. Davis, is now the duly appointed and acting Director General, as agent, under Section 206 of the Transportation Act of 1920, and against whom all suits and actions at law arising against Walker D. Hines, formerly Director General of Railroads, during his operation and control, are authorized and directed to be instituted.

"(2) That at the times hereinafter referred to Walker D. Hines, as Director General of Railroads, was operating, controlling, and managing the Southern Railway Company, which said railway was then, and now is, the owner of tracks, roadbed, and other property in the County of York and State of South Carolina.

"(3) That while the plaintiff was engaged in working as a section hand on the track and roadbed owned by the Southern Railway Company, near Smith's Turnout, in the County of York, and State aforesaid, on the 24th day of September, 1919, the plaintiff had his left leg injured by a cross-tie falling across it, bruising it, and breaking the skin on his said leg, and the agents, officers, and servants of the defendant, or his predecessor, Walker D. Hines, who was then Director General of Railroads, directed the plaintiff to go to Dr. Thomas A. Crawford, who was the duly appointed and acting surgeon of the Director General of Rail-

roads at that time, for surgical treatment and attention, and, acting upon the request, advice, and direction of the defendant, or his predecessor, Walker D. Hines, Director General of Railroads, this plaintiff did go to the said Dr. Thomas A. Crawford for treatment, and the said Dr. Thomas A. Crawford so negligently, carelessly, and unskillfully treated and attended to plaintiff's said wounded leg, and so negligently and carelessly neglected to give it the proper attention and treatment, that it became infected, festered, and permanently injured, and plaintiff was caused to suffer intense pain and rendered unable to perform any work or to provide a living for himself and his family, all to his damage in the sum of $10,000.

"(4) That at the time of plaintiff's injury, as above set out, he was 54 years of age, had a wife and children, and was earning about $5 per day as a section hand, and was in sound health.

"(5) That plaintiff's said injury was caused by the negligence, carelessness, willfulness, recklessness, and wantonness on the part of the defendant, or his predecessor, Walker D. Hines, as Director General of Railroads, his agents, officers, and servants, in the following particulars:

"(a) In recommending, requesting, and directing the plaintiff to go to Dr. Thomas A. Crawford for surgical treatment, when he knew that the said Dr. Thomas A. Crawford was not a surgeon, but simply a doctor of medicine, and on the 24th day of September, 1919, the date of plaintiff's injury, and previous and subsequent thereto, the said Dr. Thomas A. Crawford, who was a gentleman of high standing and had once been a capable physician, was incompetent to give to the plaintiff the proper care and attention and surgical treatment, by reason of the fact that he was suffering from a protracted illness, which affected his mental capacity, and rendered him wholly unfit and incompetent as a physician and surgeon to treat the plaintiff,

which fact was well known to the defendant and to his predecessor, Walker D. Hines, who was then Director General of Railroads, his agents and servants, who notwithstanding full knowledge of his incompetency at the time of and prior to the date of plaintiff's injury, retained him as a surgeon and put this plaintiff under his care and treatment.

"(b) In negligently, carelessly, and recklessly failing and neglecting to send the plaintiff to a hospital at Chester or Rock Hill, S. C., where he could have the care and attention of a competent surgeon, and in negligently, recklessly, and carelessly placing the plaintiff under the care and treatment of a physician and surgeon whom defendant knew at the time, and had long known, was incompetent to do any serious surgical or medical work, on account of a serious and protracted illness.

"(6) That after plaintiff's injury the defendant, or his predecessor in office, Walker D. Hines, Director General of Railroads, his officers, agents, and servants admitted liability for plaintiff's said injuries, but, notwithstanding admission of liability, has failed and neglected to settle with him on account of his said injuries, or to pay him anything whatsoever for same.

"Wherefore plaintiff demands judgment against the defendant for the sum of $10,000 and for the costs of his action."

The Judge's charge here follows:

"Now, Mr. Foreman, and gentlemen of the jury, you will have observed from the readings of the papers which you heard here in this case, and the arguments of the lawyers, that this question here has narrowed down for your determination, not to inquire whether this plaintiff, this old negro, is entitled to any damages for negligence with respect to getting hurt for handling cross-ties. That question is not in the case at all; his lawyers and himself are not seeking

for you to find a verdict against the Director General of Railroads for that. They confine their claim to negligent employment, and negligent conduct on the part of the physician employed by the railroad, the Director General, as they claim, in attending to his wound, and in bringing about more serious and disastrous consequences to him as a result of that wound, from lack of proper attention to him, causing him greater pain and suffering than he would have sustained if it had been properly attended to by a competent physician; and greatly—permanently disabled him, and great loss of time, earnings, etc., they claim.

"Now, gentlemen, ordinarily speaking, it is not the duty of the employer to furnish medical attention to one who is injured in his employ, unless it is some such very serious injury as renders the party incapable of looking out for himself; but the employer can assume that obligation; he can undertake it; or if he has not undertaken it beforehand he can assume it and become responsible for it, for medical attention being furnished to one who has been injured in his employ. And if that medical attention is carelessly and negligently done, and his injuries result proximately from that negligence in carrying out the proper medical attention, why, of course, the employer is responsible for the conduct of the medical attention.

"Now, it is claimed in this complaint that the Director General did assume to have a doctor for this man, and that he knew, or should have known, that the doctor in question was incompetent by reason of physical and mental deficiencies, etc., at the time—was incompetent to attend to this injury. That is what this plaintiff claims the Director General undertook, to furnish a doctor—could have ascertained that the doctor was not of sufficient capacity at the time to give the thing the proper sort of attention, and that, therefore, he is liable for the damages resulting from such negligent and careless medical attention. And it appears to

the Court that those are the questions that you gentlemen
have to decide.

"Now, it is argued here that there must be absolute proof
that the Director General knew that the physician was not
in a condition to treat this man's trouble; and while, in the
common term, under which expressed as well as implied
—even if there was no direct information given to the
Director General, yet if you gentlemen decide from the testi-
mony, by the greater weight of it, that he could have known,
in the exercise of due care and diligence, should have known
that this physician was not in a condition to treat the man
for his injury, then he is bound by that as if he would have
—if he had direct and absolute knowledge upon it. And that
is perfectly plainly laid down here in the case which you have
heard the counsel referring to, showing which, in a par-
ticular case, the Supreme Court laid down the ruling, 'action
by employer in securing—from which constructive knowl-
edge of physician's incomptency could be inferred.'

"Now, in this complaint drawn in this case, which you
have before you, it is alleged that the Director General knew,
or should have known, that the physician was incompetent,
and that is the case we have here. It is not alleged in—in
the case before you it is so alleged in the papers. Of course,
the mere allegation of that is not enough; it must not only be
alleged, but it must be proved by the greater weight of the
testimony, as the plaintiff must make out his case here before
you by the greater weight of the testimony upon a very
material point—that point is, that the employer had knowl-
edge, or some fact from which constructive knowledge of
the physician's competency could have been inferred.    If
you decide that in view of the testimony, the question is,
was the physician competent, or was he negligent in taking
care of this man's injury? And if as result of that negli-
gence, failure to fairly perform an ordinary well-known
attention, and the proximate result there made the injury

to this man's leg, in the way of further pain and suffering, impairment of his earning capacity, the loss of earnings during a period of time; and if the injury be permanent, such as of necessity would follow from the injury in the future, that is what we call actual damages. No punitive damages are recoverable in such a case as this, because our Supreme Court has held that, even though shown that the Director General is guilty of the utmost, willful, wanton, and reckless brutality toward the employee, no punitive damages could be computed against him. So that is settled in our Court; the jury could not compute punitive damages against the Director General of Railroads. You can give only actual damages, if you find any damages at all; and if you decide for the plaintiff under these general principles, it would be actual damages; and you would say: We find for the plaintiff so much money actual damages. If you decide the case the other way, the defendant coming in and denying everything set up in the complaint, and putting the plaintiff to prove his claims by the greater weight of the testimony, you find for the defendant. In this case the plaintiff cannot recover, even if he was negligently treated by a physician, unless it is shown that the Director General of Railroads knew, or reasonably ought to have known, that the physician was incapable or incompetent to treat his alleged injuries.

"Now, under those principles, gentlemen, take this paper that is marked 'Complaint,' the yellow paper marked on the outside 'Complaint and Summons for Relief,' and write on the back of it there: We find for the plaintiff so much money actual damages, writing it out in words and not in figures— or: We find for the defendant. Take the papers and decide the case."

Exceptions 7 and 8 are as follows:

"(7) Because the Presiding Judge erred in charging the jury as follows: 'Now, gentlemen, ordinarily speaking, it

is not the duty of the employer to furnish medical attention to one who is injured in his employ, unless it is some such very serious injury as renders the party incapable of looking out for himself; but the employer can assume that obligation; he can undertake it; or if he has not undertaken it beforehand he can assume it and become responsible for it, for medical attention being furnished to one who has been injured in his employ. And if that medical attention is carelessly and negligently done, and his injuries result proximately from that negligence in carrying out the proper medical attention, why, of course, the employer is responsible for the conduct of the medical attendant'—the error being that the master or employer is not liable for negligence on the part of a physician employed by him unless he has knowingly employed an incompetent physician, and such error was not cured by his subsequent charge to the contrary, as it left the jury to speculate as to which was the correct charge of the law.

"(8) Because the Presiding Judge, after stating to the jury that the complaint alleged the employment of an incompetent physician, erred in charging the jury in connection therewith as follows: 'If you decide that in view of the testimony, the question is, was the physician competent, or was he negligent in taking care of this man's injury? and if, as a result of that negligence, failure to fairly perform an ordinary well-known attention, and the proximate result there made the injury to this man's leg, in the way of further pain and suffering, impairment of his earning capacity, the loss of earnings during a period of time; and if the injury be permanent, such as of necessity would follow from the injury in the future, that is what we call actual damages'— the error being that such charge was not a correct statement of the law, and left the jury to infer that it could give damages for negligence in treating plaintiff's injury, and was also confusing and misleading to the jury; and such error, it is

submitted, was not cured by the later statement of the Presiding Judge to the effect that the plaintiff could not recover for negligent treatment unless the defendant knew, or ought to have known, that the physician was incapable or incompetent, as such charge left the jury to speculate as to which was the correct statement of the law."

*Messrs. McDonald &McDonald* and *Frank G. Tompkins,* for appellant, cite: *Federal Employers' Liability Act regulates liability of common carriers for injuries to employees engaged in interstate commerce:* 223 U. S., 1; 56 L. Ed., 327. *Same: provides exclusive remedy:* 98 S. C., 197; 234 U. S., 85; 58 L. Ed., 1226; 232 U. S., 247; 58 L. Ed., 591; 228 U. S., 702; 57 L. Ed., 1031; 160 F., 874; 231 F., 591; 223 F., 591; 18 R. C. L., 841. *Test of employment in interstate commerce:* 251 U. S., 259; 64 L. Ed., 258; 239 U. S., 556; 60 L. Ed., 436. *Defendant under no legal duty to supply medical aid:* 108 S. C., 266; 100 S. C., 96; 1 Nott & McC. 452; 95 Tenn., 713; 45 A. S. R., 767; 18 R. C. L., 506; 21 R. C. L., 873; 4 L. R. A. (N. S), 1, note; 8 A. L. R., 515, note. *Liability of interest carrier for damages to injured servant:* 128 S. C., 220; 108 S. C., 266. *Cause of action for original injury and for subequent injury aggravating the first must be treated as one cause:* 128 S. C., 219; 107 S. C., 200; 36 A. S. R., 845. *Railroad only liable for negligence in selecting physician:* 100 S. C., 96. *Physician presumed reasonably skilful in absence of proof:* 128 S. C., 221.

*Messrs. Wilson & Wilson* and *Thomas F. McDow* for respondent.

July 20, 1926.

The opinion of the Court was delivered by MR. ACTING JUSTICE C. J. RAMAGE.

This is an action by plaintiff against Davis, as 1, 2  Director General. The complaint and charge of the Presiding Judge will be set out in full in the report

of the case. The answer is a general denial. Plaintiff's testimony was to the effect that he was working as a section hand on the track and roadbed owned by Southern Railway Company on September 24, 1919; that a cross-tie fell on the leg of plaintiff and that he was bruised and injured to such an extent that it was necessary to send plaintiff to a physician; Legrand the section boss sent him to Dr. Tom Crawford, who told plaintiff that he could not lance plaintiff's leg, unless he got a note from Mr. Legrand; Legrand gave plaintiff this note, and then Dr. Crawford treated plaintiff; after a lapse of some time as plaintiff got worse, he was sent to the hospital and his leg was in a badly infected condition and pus had burrowed up from the ankle to near the knee cap. Plaintiff claims that he had much suffering and sustained a permanent injury by reason of the treatment of Dr. Crawford, who was incompetent to give this treatment, and that Dr. Crawford's unfitness and incompetency was known to defendant at the time he put plaintiff under the treatment of the said Dr. Crawford.

"Whatever the liability of a physician or surgeon who may be selected by an employer to treat professionally an injured employee, the employer may not be held liable for malpractice of the person selected, unless it can be shown that there was negligence in the selection of the particular individual. So where a corporation undertakes to furnish medical or surgical treatment to employees, it discharges the full measure of its duty when it procures a surgeon or physician of reasonable skill and good reputation in his profession and is not liable for his negligence. But if the employer for his own purposes and ends secures the attendance of a physician, the rule is otherwise." 18 R. C. L., p. 603, § 103.

"Where, though not under an obligation to do so, the master undertakes the relief of an injured or incapacitated servant, he is bound to act with reasonable care so that the

injury to the servant shall not be increased.  So where the railroad employer undertakes to assume control and take charge of the injured emlpoyee, although under the conditions present at the time it might not have been under any duty to furinsh such medical aid or attention, it is bound to the same measure of duty and care as would exist in a case in which in the first instance it would have been under such a duty." 39 Corpus Juris, p. 244, § 355.

"Where * * * the master undertakes gratuitously to furnish medical attention to an employee, he is bound to exercise reasonable care in the selection of a competent physician and in continuing him in his employ, but he is not, according to the weight of authority, liable for the physician's negligence or lack of skill, although there is some authority to the contrary; and it has been held that, where an employer maintains a safety and health department in charge of which he places a graduate nurse and direct his employees to go to her for treatment in case of injury, it is liable for her negligence. * * * Where a physician is employed by the master, but the relation of physician and patient does not exist between him and the servant, the rule of respondeat superior applies and the master may be liable for his negligence.  In any event, in order to hold the employer liable for the negligent treatment of the employee, such negligence must be established and the complaint must positively and directly allege the facts imposing liability." 39 Corpus Juris, pp. 244, 245, § 356.

The doctrine that a master has discharged his duty when he selects a reasonably competent physician seems to be sustained by the following cases from our own Courts: *Owens v. Atlantic Coast Lumber Corporation,* 108 S. C., 266; 94 S. E., 15. *Easler v. Railway,* 100 S. C., 96; 84 S. E., 417, L. R. A. 1915-D, 883, and *Hardin v. Railway,* 128 S. C., 216; 122 S. E., 582.

In *Mondou v. N. Y., N. H., etc., Ry.,* 223 U. S., 1; 3, 4 32 S. Ct., 169; 56 L. Ed., 327; 38 L. R. A. (N. S.), 44, it was held that the State Courts can apply the Federal Employers' Liability Act (U. S. Comp. St., §§ 8657-8665), as well as the Federal Courts.

In speaking of this act, 39 Corpus Juris, p, 266, § 385, says:

"However, the act is broad enough to cover any negligence· for which a common carrier engaged in interstate commerce can be responsible to its employees therein."

"To render the act applicable, the particular service in which the employee is engaged must be a part of interstate commerce." *Erie Ry. Co., v. Jacobus,* 221 F., 335; 137 C. C. A., 151.

"The purpose of the Act is to grant additional rights to servants and to remove existing defenses by the master in actions for injured servants." *Hulac v. Chicago & N. W. Ry. Co.* (D. C.), 194 F., 747.

"This Act held to cover every act of negligence for which a carrier might be liable to its employees engaged in interstate commerce." *De Atley v. Ches. & O. Ry.* (D. C.), 201 F., 591.

"The Act covers injuries occurring at the moment when the particular service performed is a part of interstate commerce." *Corbett v. Boston & M. Ry. Co.,* 219 Mass., 351; 107 N. E., 60; 12 A. L. R., 683.

"The purpose of the Act is not to abridge but to enlarge the liability of interstate carriers. * * * " *Grow v. Oregon, etc., Ry. Co.,* 44 Utah, 160; 138 P., 398, Ann. Cas., 1915-B, 481.

"The Act held to apply to every person whom Congress could include." *Horton v. Oregon, etc., R. Co.,* 72 Wash., 503; 130 P., 897; 47 L. R. A. (N. S.), 8.

The decisions hold that, where a laborer is at work repairing a track over which interstate trains pass, he is engaged

in interstate commerce, and yet the next job may affect only intrastate matters; in other words, the case can be shifted from interstate to intrastate commerce in an incredibly short time, and the character of the act at the moment determines the question.

We fail to see where the act of the defendant in choosing Dr. Crawford had any of the elements of interstate commerce in it. That act is what the complaint is based on and we must be governed by the allegations contained in the pleadings. It was a purely intrastate matter.

It was in testimony that Dr. Crawford said, "I am going to send in your claim for your accident"; that he pulled out two papers.

The complaint charges that defendant retained Dr. Crawford as a surgeon and put this plaintiff under his care and treatment. Legrand testified that at the time he was employed by the defendant; that plaintiff was working for defendant at the time of the injury; that he sent plaintiff to Dr. Crawford; "that Dr. Crawford was the railroad doctor"; that Dr. Crawford had been a doctor for the railroad for a good many years. The following is taken from the testimony of Dr. R. H. Crawford (folio 151):

"Q. Your father, he was surgeon of the Southern Railway? A. Yes, sir; local surgeon.

"Q. And retained the position up to the time of his death? A. Yes, sir.

"Q. And for the government also, under the Railroad Commission? A. Yes, sir; he was for the Southern Railway."

Dr. Fennel testified that the Director General paid him for the treatment in the hospital, and that Dr. Crawford sent plaintiff to his hospital.

The exceptions raise two questions: (1) In not directing

a verdict for the defendant; (2) in making the charge set out in the case or at least certain portions of it.

1. If Dr. Crawford was the agent of the defendant and under certain phases of the law and evidence in this case he could be so held, then there could be no doubt as to the liability of the defendant in this case. However, we are going to apply the rule laid down in the citations above and in the charge of Judge Memminger that the defendant can only be held liable for negligence in selecting an incompetent physician.

Now, as stated above, the theory of the case is that, when the master undertook to furnish gratuitously medical service, he was bound to exercise ordinary care in the selection of the physician. Now, at the time the master undertook this task of supplying the physician is when this case begins and not before; his assumed duties and obligation began when he sent the plaintiff to Dr. Crawford and from then on the entire transaction was intrastate and not interstate. Under the testimony in this case his Honor was clearly right in submitting the case to the jury.

It may be stated further that, even if the case were under the Federal Employers' Liability Act, the result would not be different; for, as stated in the citations *supra*, the Act is broad enough to cover any negligence for which a common carrier engaged in interstate commerce can be responsible to its employees therein. "The words 'suffering injury' are not confined to injuries which are attended with force or violence, etc."

Inhaling of paint mist from paint gun is sufficient to create liability under the Federal Employers' Liability Act. *Baltimore & O. R. Co., v. Branson,* 128 Md., 678; 98 A., 225.

2. We do not think that his Honor erred in his charge.

"In order to the maintenance of every civil action

for damages, two elements are essential and must concur. There must be, first, a technical violation of right, or an injury; there must be, second, resultant damages. To this rule actions for damages for personal injuries, constitute, of course, no exception.

"* * * *Damnum absque Injuria.* Where there has been no violation of right the situation has been described as damnum absque injuria, in which circumstances recovery is not permitted, no matter to what extent the plaintiff may have sustained damages." Watson on Damages for Personal Injuries, pp. 3, 4.

"*Injuria sine Damno.* About the nearest approach to a true example of *injuria sine damno* is that class of cases where some damage must be shown to constitute a cause of action, as, for example, in action for negligence." Id., p. 7.

The defendant can only be held liable under the theory that said defendant was negligent in the selection of the physician, who was incompetent, and that plaintiff was damaged by this negligence as a proximate cause; in other words, to use the words quoted by "Watson" there must be *damnum plus injuria.* This is necessary to bring liability home to the defendant. To quote part of the charge (folios 177, 178):

"Now it is claimed in this complaint that the Director General did assume to have a doctor to this man, and that he knew or should have known that the doctor in question was incompetent by reason of physical and mental deficiencies, etc., at the time, was incompetent to attend to this injury. That is what the plaintiff claims the Director General undertook, to furnish a doctor, could have ascertained that the doctor was not of sufficient capacity at the time to give the thing proper sort of attention, and that, therefore, he is liable for the damages resulting from such negligent and careless medical attention. And it appears

to the Court that those are the questions that you gentlemen have to decide."

Defendant states on page 18 of his Points and Authorities:

"If, however, this Court should not sustain our contention as to a directed verdict, then we submit that, upon the errors pointed out in exceptions 7 and 8, a new trial should be granted. The parts of the charge excepted to are clearly erroneous as a matter of law and while his Honor did at one place instruct the jury that damages could not be found for negligence of the physician or surgeon, yet in other parts of the charge he stated that a verdict could be rendered for negligent or careless treatment. In the part quoted in exception 7, folio 197, he stated to the jury: 'And if that medical attention is carelessly and negligently done, and his injuries result proximately from that negligence in carrying out the proper medical attention, why, of course, the employer is responsible for the conduct of the medical treatment.' "

The often-stated rule is that all of the charge must be taken and construed together. The Judge told the jury in effect that the negligence of the physician could not be imputed to the defendant, unless he was negligent in selecting an incompetent physician to treat plaintiff, and in such case, defendant would be placed in a position to be held liable; in other words, no matter how negligent a master may be in the selection of a physician, yet if the servant was not as a matter of fact injured by the treatment, it would be a case of *damnum absque injuria,* or rather *damnum sine injuria.*

But, on the other hand, if plaintiff was injured by the incompetent physician, then defendant's negligence in selecting the physician would be the proximate cause of the damage and the physician's negligence could be imputed to defendant. Just the same as if when the railroad fails

to give crossing signals and no one is hurt, there is no liability; but if some one is hurt by the failure to give these signals, and that person is not grossly negligent, then there would be a liability.  This is what the Judge below conveyed to the jury: (1) That plaintiff could not recover unless he was injured by the physician's negligence and (2) unless the defendant was also negligent in the selection of an incompetent physician and that plaintiff must show all this by the greater weight of the testimony.  As to the portion quoted above, to which defendant excepts, his Honor told the jury in other portions of the charge that this responsibility for the negligent medical attention would not be laid to defendant, unless defendant was also negligent in the selection of the said physician.

It appears to us that a fair construction of the Judge's charge as a whole will show that it stated the law applicable to the case in a fair and just manner.

It is the judgment of this Court that the judgment below be affirmed.

MESSRS. JUSTICES WATTS, COTHRAN, BLEASE and STABLER concur.

MR. CHIEF JUSTICE GARY did not participate.