478 S.E.2d 81

**Tommy G. TUMBLIN, As Personal Representative of the Estate of Betty M. Tumblin, Appellant,**

v.

**BALL–INCON GLASS PACKAGING CORP., Ball Corporation, Laurens Family Practice Assoc., and Byron Parker, M.D., Respondents.**

No. 2566.

Court of Appeals of South Carolina.

Heard Sept. 10, 1996.
Decided Oct. 7, 1996.
Rehearing Denied Nov. 21, 1996.

360

Rodney M. Brown, of Younts, Alford, Brown & Goodson, Fountain Inn, for appellant.

Monteith P. Todd, of Sowell, Todd, Laffitte, Beard & Watson, Columbia; Charles E. Carpenter, Jr., R. Davis Howser and Deborah Harrison Sheffield, all of Richardson, Plowden, Grier & Howser, Columbia, for respondents.

CURETON, Judge:

This is a wrongful death case arising out of the heart attack death of Betty M. Tumblin. Her personal representative's complaint alleges negligence against Ball–Incon Glass Packaging Corporation (Ball–Incon), the employer of Betty Tumblin, and professional negligence against Dr. Byron Parker and Laurens Family Practice Associates. The trial court directed

a verdict in favor of all of the respondents at the end of the appellant's case. The personal representative appeals. We affirm.

## I.  *Facts*

On March 26, 1992, Betty Tumblin began working for Ball–Incon Glass Packaging Corporation.  In connection with her work, her employer required her to undergo a physical examination performed by Dr. Byron Parker of Laurens Family Practice Associates on April 14, 1992.  On April 24, 1992, Tumblin died suddenly while on a break at work.  The autopsy report states Tumblin died as a result of "acute coronary insufficiency due to severe coronary atherosclerosis."

Harriett Dease, plant nurse for Ball–Incon, testified she scheduled the pre-employment physical for Tumblin.  The physical examination form, which is supplied by the employer, includes areas for the applicant to fill in personal and family medical history.  Dease performed an audiometric exam on Tumblin on April 14, 1992.  At that time, Tumblin told Dease that she had hypertension, which Dease noted on the audiometric examination form.  Dease testified such a condition was not unusual because approximately twenty to thirty percent of their employees have high blood pressure.

Dr. Parker, who had no independent recollection of having performed Tumblin's physical, testified that based upon his records he and his nurse took blood pressure readings which were mildly elevated.  Dr. Parker's medical notes reflected he instructed Mrs. Tumblin of the results of her examination and he testified that advising patients to follow up with their family doctor is normal procedure.  Based upon the one episode of elevated blood pressure, he did not find Tumblin limited in her physical activities or unsuitable for employment. According to Parker, Tumblin's death was not related to her blood pressure or work exertion.

Dr. Donald DeWitt, a professor of family medicine at East Carolina University School of Medicine, testified as an expert witness for the appellant.  He testified Dr. Parker's finding of elevated blood pressure during Tumblin's physical examination should have been not only communicated to her in a more "dictatorial manner", but also transmitted to the employer

with a request that her employment be suspended pending further evaluation of her health. Dr. DeWitt stated Dr. Parker should have gone further in his examination of Tumblin by performing additional tests to determine the reason for the elevated blood pressure. Dr. DeWitt opined that her death could have been averted if this had been done. He also stated that advising Tumblin to have her family doctor check her blood pressure was not adequate, at least as far as Tumblin was concerned. With respect to the employer, Dr. DeWitt testified that the employer failed to meet its responsibility because it did not ensure that Tumblin's blood pressure was further evaluated pursuant to company policy. He stated the proximate cause of Tumblin's death was (1) the failure to proceed with further evaluations based upon an abnormality found at the time of the physical; and (2) the fact the company put her back to work without questioning the elevated blood pressure.

The employer moved for a directed verdict asserting (1) there was no duty owed to Mrs. Tumblin, (2) if there was a duty it was not breached, (3) there was no proximate cause shown, and (4) workers' compensation was appellant's exclusive remedy. Dr. Parker moved for a directed verdict asserting (1) there was no physician-patient relationship and therefore no duty was owed to Tumblin, (2) there was no breach of duty, and (3) no showing of proximate cause.

In granting a directed verdict to Dr. Parker, the trial court found no doctor-patient relationship. As to the employer, the court did not specifically rule on the workers' compensation claim because the appellant conceded Tumblin's death was not work related. The trial judge directed a verdict for the employer because Tumblin was informed of her elevated blood pressure and the court concluded the employer could be held liable only if it "had not informed the employee of the findings of the doctor."

## II. *Arguments*

The appellant argues Dr. Parker was negligent in performing the pre-employment physical of Betty Tumblin because he (1) failed to conduct a further evaluation, (2) failed to suspend or hold up her employment, and (3) failed to inform her of her coronary artery disease. The appellant relies upon the testi-

mony of his expert witness, Dr. Donald DeWitt, to conclude that Dr. Parker's finding of elevated blood pressure was a "red flag" which required him to suspend Tumblin's employment and conduct further evaluations. He contends the existence of a doctor-patient relationship was a question of fact which should have been determined by the jury.

With respect to Ball–Incon, the appellant argues the employer should be held liable if the employer undertook to require a pre-employment physical and the chosen physician was negligent in conducting the physical. He also asserts the employer was negligent in not following its company policy to further evaluate Tumblin's medical condition and in allowing her to work in the interim.

Dr. Parker asserts no physician-patient relationship existed between him and Betty Tumblin when he performed a pre-employment physical at the request of her employer. Dr. Parker also argues that even if a duty of care existed, he did not breach that duty because he accurately reported Mrs. Tumblin's blood pressure to her and to her employer and advised her to have it checked by her family physician.[1] Further, Dr. Parker argues proximate cause did not exist because neither high blood pressure nor exertion at work caused Tumblin's death.

Ball–Incon argues it hired a competent physician to perform the pre-employment physical who informed Tumblin of her elevated blood pressure and advised her to see her family physician. The company asserts it did not owe Tumblin a duty to further evaluate her mildly elevated blood pressure. It also contends it had no duty to inform Tumblin of the results of her pre-employment examination "in a more aggressive manner" because Dr. Parker had already advised her to have her blood pressure checked. Additionally, the company argues the work was not a proximate cause of Tumblin's death and the elevated blood pressure did not cause her death.

In addition, Ball–Incon argues that the statutory workers' compensation scheme provides Tumblin's exclusive remedy. The trial court refused to reach the issue, but stated that if it had, it would have found Tumblin not entitled to benefits

---

1. There is no contention that Dr. Parker did not advise Mrs. Tumblin to have her blood pressure checked by her family physician.

because Tumblin conceded that the death was not work related.

### III. *Applicable Law*

In deciding a motion for directed verdict, the evidence and all reasonable inferences must be viewed in the light most favorable to the nonmoving party. If more than one inference can be drawn from the evidence, the case must be submitted to the jury. *Dalon v. Golden Lanes, Inc.*, 320 S.C. 534, 466 S.E.2d 368 (Ct.App.1996). In ruling on a directed verdict motion, the trial court does not have the authority to decide credibility issues, nor may it resolve conflicts in the testimony and evidence. *Garrett v. Locke*, 309 S.C. 94, 419 S.E.2d 842 (Ct.App.1992). However, if the evidence yields only one inference, a directed verdict in favor of the moving party is proper. *Cock–n–Bull Steak House, Inc. v. Generali Ins. Co.*, 321 S.C. 1, 466 S.E.2d 727 (1996).

In medical malpractice cases, the plaintiff must establish by expert testimony both the standard of care and the defendant's failure to conform to the standard, unless the subject matter lies within the area of common knowledge and experience so that no special knowledge is needed to evaluate the defendant's conduct. *Pederson v. Gould*, 288 S.C. 141, 341 S.E.2d 633 (1986); *Jernigan v. King*, 312 S.C. 331, 440 S.E.2d 379 (Ct.App.1993). Expert testimony is also generally required to establish proximate cause in medical malpractice cases. *Bramlette v. Charter–Medical–Columbia*, 302 S.C. 68, 393 S.E.2d 914 (1990).

The establishment of a doctor/patient relationship is a prerequisite to a claim of medical malpractice. *Roberts v. Hunter*, 310 S.C. 364, 426 S.E.2d 797 (1993). "The relation is a consensual one wherein the patient knowingly seeks the assistance of a physician and the physician knowingly accepts him as a patient." *Id.* at 366, 426 S.E.2d at 799 (quoting 61 Am.Jur.2d *Physicians & Surgeons* § 158 at 290 (1981)).

The existence of a physician-patient relationship is a question of fact for the jury. *Ellis by Ellis v. Niles*, 316 S.C. 516, 450 S.E.2d 631 (Ct.App.1994). Nevertheless, other jurisdictions have held almost uniformly that a physician who has been retained by a third party to undertake a medical exami-

nation of an individual cannot be held liable to that individual for malpractice as a result of that examination, "where he neither offered nor intended to treat, care for, or otherwise benefit the individual and did not injure him during the course of the examination.... A different result is, of course, mandated where the physician did assume the role of treating the patient." (Citations omitted). *Peace v. Weisman,* 186 Ga. App. 697, 368 S.E.2d 319, 320–321 (1988); *Rand v. Miller,* 185 W.Va. 705, 408 S.E.2d 655 (1991) (holding a physician who undertakes to evaluate a prospective employee's medical records for the employer lacks a sufficient professional relationship with the employee to support a medical malpractice action). Thus, the factual issue in a third party situation such as this is whether the physician either injured the worker during the examination, or whether the physician went beyond a mere examination and offered to treat or care for the worker. We believe that the trial judge correctly granted a directed verdict to Dr. Parker on the issue of a physician-patient relationship, because the only reasonable inference from the evidence in the record is that Dr. Parker neither injured Tumblin in the examination, nor did he intend to treat, care for, or benefit her.

▆▆▆ In requiring an employee to submit to a pre-employment physical, the employer owes the employee a duty to hire a competent physician to perform the examination. *Crawford v. Davis,* 136 S.C. 95, 134 S.E. 247 (1926); *Hardin v. Southern Ry. Co.,* 128 S.C. 216, 122 S.E. 582 (1924). If an employer undertakes to ascertain whether an employee is physically fit for a job, the employer is liable if he negligently fails to determine the employee's fitness and injury results to the employee. *Isgett v. Seaboard Coast Line R.R. Co.,* 332 F.Supp. 1127 (D.S.C.1971) (action under Federal Employer's Liability Act). However, the employer is bound to exercise only ordinary care in the selection of the physician. *Crawford,* 136 S.C. at 105, 134 S.E. at 251. "[W]hen the employer has selected a reasonably competent physician to treat an injured employee or passenger, then there can be no liability for any default, mistake, or malpractice on the part of the physician so employed." *Hardin,* 128 S.C. at 220, 122 S.E. at 583.

## IV. *Conclusion*

While Ball–Incon was not required by law to perform a pre-employment physical of Tumblin, it voluntarily chose to do so. However, it did not undertake to provide Tumblin with a comprehensive physical examination to evaluate her general health. While Dr. Parker's examination of Tumblin revealed a mildly elevated blood pressure,[2] her own expert testified her blood pressure had nothing to do with the cause of her death. Moreover, Dr. Parker reported the elevated pressure to Ball–Incon, brought the matter to Tumblin's attention, and suggested Tumblin follow up with her family doctor. Nevertheless, appellant insists Dr. Parker and Ball–Incon should have done more.

We hold neither a physician who merely examines a job applicant to determine her fitness for a job, nor an employer who hires the doctor to perform the examination, owes a duty to the applicant to discover the presence of a disease. Such a holding would place an unreasonable burden on employers. *Lotspeich v. Chance Vought Aircraft,* 369 S.W.2d 705 (Tex.Ct.App.1963) (failure to advise plaintiff of active tuberculosis disclosed on chest X-ray taken as part of pre-employment physical). We agree with appellant that the national trend appears to impose a duty on an examining physician to exercise "the level of care consistent with the doctor's professional training and expertise, and to take reasonable steps to make information available timely to the examinee of any findings that pose an imminent danger to the examinee's physical or mental well-being." *Green v. Walker,* 910 F.2d 291, 296 (5th Cir.1990). Even if we accept as true appellant's expert's premise that the mildly elevated blood pressure should have raised "a red flag," we hold Dr. Parker fulfilled his responsibility by informing Tumblin of her blood pressure reading and suggesting she follow up with her private doctor. Likewise, we hold Ball–Incon breached no duty to Tumblin in not suspending her employment for what appeared to it to be a malady that posed no imminent danger to her health.

---

2. Her expert referred to it as a "modest elevation."

Accordingly, the order of the trial court is
**AFFIRMED.**

ANDERSON and HOWARD, JJ., concur.