595 S.E.2d 831

**Frances Adena FULLER, individually and as personal representative of the Estate of Robert Ray Fuller, deceased, Respondent,**

v.

**Gerald E. BLANCHARD, Appellant.**

**No. 3763.**

Court of Appeals of South Carolina.

Submitted Dec. 8, 2003.

Decided March 22, 2004.

Rehearing Denied May 20, 2004.

---

Charles E. Carpenter, Jr., George C. Beighley and S. Elizabeth Brosnan, all of Columbia, for Appellant.

Charles L. Henshaw, of Columbia, for Respondent.

GOOLSBY, J.:

Frances Adena Fuller ("Mrs.Fuller") brought wrongful death, survival, and loss of consortium claims against Dr. Gerald E. Blanchard, alleging he committed medical malpractice in negligently failing to advise her husband, Robert ("Mr.Fuller"), of the adverse results of a cancer screening test. Dr. Blanchard moved for summary judgment on his defenses that the action was barred as a matter of law by the exclusive remedy provision of the South Carolina Workers' Compensation Act and because he owed no duty of care to Mr. Fuller. The circuit court granted Mrs. Fuller's cross-motion for summary judgment on the two defenses, and Dr. Blanchard appeals. We affirm.[1]

## FACTS

Mr. Fuller worked as a chemical engineer at Westinghouse. In 1996, Westinghouse offered a Prostate Specific Antigen (PSA) test to its male employees as part of the blood work done for their required annual physical examinations. The usual procedure was for the employee to have blood drawn for lab testing and then report to the physician for a physical examination a week to ten days later. At that time, the physician would review the test results, report them to the employee, and give the employee a copy. An abnormal PSA

---

1. We decide this case without oral argument pursuant to Rule 215, SCACR.

result indicated that the patient's prostate gland could be diseased and that the patient needed to seek further treatment.

Pursuant to an agreement between Westinghouse and Doctors Care, Dr. Blanchard, an employee of Doctors Care, performed physical examinations for the employees of Westinghouse and was on site twice a week to perform these services for a total of about four hours each week. Dr. Blanchard and a nurse, who was a full-time Westinghouse employee, received all blood test results and reviewed them before Dr. Blanchard conducted the physical examinations. Dr. Blanchard's established procedure was to report to each employee any abnormal test results, give the employee one copy of the lab work, and recommend that the employee see his family physician.

Westinghouse employees saw Dr. Blanchard only for routine employment physicals or for examination prior to returning to work after surgery or illness. On average, he saw between ten and fifteen employees during each session at Westinghouse. Dr. Blanchard was paid by Doctors Care and did not receive any payment for his services from Westinghouse.

In October 1996, Mr. Fuller's blood was drawn and sent for lab testing, which included a PSA test. The report showed a 5.0 PSA level. Dr. Blanchard stated that upon seeing a PSA level of 5.0 he routinely would have recommended to the employee that he consult his personal physician. He could not, however, specifically recall whether he informed Mr. Fuller of the elevated PSA level or advised him to see his family physician. There was no notation in the medical chart completed by Dr. Blanchard that Mr. Fuller was ever informed of the elevated PSA level.

In August 1997, Mr. Fuller again had a PSA test performed as part of his annual physical at Westinghouse. This time Mr. Fuller's PSA level was more than double its previous reading. Dr. Blanchard advised Mr. Fuller that he should see his family physician. Mr. Fuller sought further treatment. In September 1997, his urologist diagnosed him with prostate cancer and informed him that his treatment options were limited because

of the progression of the cancer. Mr. Fuller died from prostate cancer on November 25, 1998.

Mrs. Fuller brought this action against Dr. Blanchard alleging medical negligence in the wrongful death of her husband. Dr. Blanchard answered and asserted as affirmative defenses that the action was barred as a matter of law because (1) the court did not have jurisdiction as the Workers' Compensation Act was the exclusive remedy, and (2) he was acting as a company physician and therefore did not have a physician-patient relationship with Mr. Fuller giving rise to a duty of care. Mrs. Fuller and Dr. Blanchard filed cross-motions for summary judgment.

The circuit court granted summary judgment to Mrs. Fuller on Dr. Blanchard's two defenses. The court found Dr. Blanchard was an independent contractor, not an employee of Westinghouse, and that Mr. Fuller's death was not a work-related injury. The court additionally found that Dr. Blanchard owed a duty of care, although limited, to Mr. Fuller.

## LAW/ANALYSIS

### I.

█ Dr. Blanchard first contends the circuit court erred in granting summary judgment to Mrs. Fuller on his defense that he was immune from suit because any medical malpractice claim was barred as a matter of law by the exclusivity provision of the Workers' Compensation Act. We disagree.

The Workers' Compensation Act is the exclusive remedy against an employer for an employee's work-related accident or injury.[2] The Act's exclusivity provision provides in relevant part as follows:

> The rights and remedies granted by this Title to an employee when he and his employer have accepted the provisions of this Title, respectively, to pay and accept compensation on account of personal injury or death by accident, *shall exclude all other rights and remedies* of such employee, his personal representative, parents, dependents or next of kin *as against his employer*, at common law or

---

2. *Strickland v. Galloway*, 348 S.C. 644, 560 S.E.2d 448 (Ct.App.2002).

otherwise, on account of such injury, loss of service or death.[3]

"The exclusive remedy doctrine was enacted to balance the relative ease with which the employee can recover under the Act: the employee gets swift, sure compensation, and the employer receives immunity from tort actions by the employee."[4]

■ Further, as a general rule, this "immunity is conferred not only on the direct employer, but also on co-employees."[5] Thus, an employee negligently injured by a co-employee conducting the employer's business may not hold the co-employee personally liable in tort, but must instead rely upon the remedies provided by the Workers' Compensation Act.[6]

Such immunity does not extend, however, to third-party tortfeasors who injure an employee acting within the course and scope of his employment; in such cases, the employee may file a claim for workers' compensation benefits for the injury and may also bring an action against the third party. Any recovery against the third party, however, is subject to subrogation.[7]

■ "[I]n general, treating physicians, as third parties to the employer-employee relationship, do not fall within the immunity provisions of the Workers' Compensation Act and are subject to suit."[8]

---

3. S.C.Code Ann. § 42–1–540 (1985) (emphasis added).

4. *Strickland,* 348 S.C. at 646–47, 560 S.E.2d at 449.

5. *Id.* at 647, 560 S.E.2d at 449; *see also* S.C.Code Ann. § 42–5–10 (1985) ("Every employer who accepts the compensation provisions of this Title shall secure the payment of compensation to his employees. . . . While such security remains in force he *or those conducting his business* shall only be liable to any employee . . . to the extent and in the manner specified in this Title." (emphasis added)).

6. *Strickland,* 348 S.C. at 647, 560 S.E.2d at 449.

7. *See* S.C.Code Ann. § 42–1–560 (1985) (providing for remedies to be obtained from third parties).

8. *Tatum v. Med. Univ. of S.C.,* 346 S.C. 194, 202, 552 S.E.2d 18, 22 (2001).

In the case before us, the circuit court found Dr. Blanchard was not entitled to blanket immunity under the Workers' Compensation Act because he provided his services to Westinghouse as an independent contractor, not its employee; further, even if Dr. Blanchard were a co-employee, Mr. Fuller's death from cancer was not work-related.

On appeal, Dr. Blanchard contends the circuit court erred in granting summary judgment to Mrs. Fuller on his defense that her claim was barred by the exclusive remedy provision of the Workers' Compensation Act. Dr. Blanchard asserts that he and Mr. Fuller were co-employees and that Mr. Fuller's death was a work-related injury.

██ "Whether or not an employer-employee relationship exists is a jurisdictional question."[9] When the issue on appeal involves jurisdiction, we can take our own view of the preponderance of the evidence.[10]

"Whether a worker is an employee or independent contractor is a fact-specific matter resolved by applying certain established principles."[11] Our supreme court has stated the general test concerns the extent of the employer's right of control:

"The general test applied is that of control by the employer. It is not the actual control then exercised, but whether there exists the right and authority to control and direct the particular work or undertaking, as to the manner or means of its accomplishment."[12]

██ "There are four elements which determine the right of control: 1) direct evidence of the right or exercise of control;

9. *Nelson v. Yellow Cab Co.*, 349 S.C. 589, 594, 564 S.E.2d 110, 112 (2002). For additional background information, see 6 Arthur Larson & Lex K. Larson, *Larson's Workers' Compensation Law* § 112.02(1) to (4) (2003).

10. *Nelson*, 349 S.C. at 594, 564 S.E.2d at 112.

11. *Id.*

12. *Id.* at 594, 564 S.E.2d at 112–13 (quoting *Young v. Warr*, 252 S.C. 179, 189, 165 S.E.2d 797, 802 (1969)).

2) furnishing of equipment; 3) right to fire; and 4) method of payment." [13]

We agree with the circuit court's determination that Dr. Blanchard provided services to Westinghouse not as its employee, but as an independent contractor. As to the evidence of the right of control and the furnishing of equipment, although Westinghouse apparently established Dr. Blanchard would be available on its premises four hours per week and provided a Westinghouse employee to assist as his nurse, the only evidence in the record indicates that Dr. Blanchard scheduled employee visits, conducted a personal review of the test results, and made his recommendations without any direct supervision or instruction from Westinghouse, as such reviews came within the scope of his own professional expertise. Regarding the right to fire and the method of payment, as noted by the circuit court, Dr. Blanchard was not employed directly by Westinghouse; rather, he was on site four hours a week to provide services pursuant to a contractual agreement Westinghouse had with Doctors Care. It was undisputed that Dr. Blanchard was not on Westinghouse's payroll and received no compensation whatsoever from Westinghouse. Rather, he was paid directly by Doctors Care for his professional services. Dr. Blanchard testified he was not involved in negotiating the contract Doctors Care had with Westinghouse and he was unaware of its terms. Finally, there is no evidence in the record that Westinghouse could have fired Dr. Blanchard.

In *Garcia v. Iserson*, relied upon by Dr. Blanchard, the Court of Appeals of New York held "that the claim of an employee for alleged malpractice [by] a physician whose professional services were made available to the employee at the employer's expense and on its premises [fell] within the scope of the Workmen's Compensation Law." [14] In *Garcia*, a physician provided by the employer, Imperial Paper Box Corp., on the employer's premises allegedly gave an Imperial employee an injection in a negligent manner. The court explained its reasoning as follows: "There was here a professional service made available by the employer to its employees; the services

13.  *Id.* at 594, 564 S.E.2d at 113.

14.  33 N.Y.2d 421, 353 N.Y.S.2d 955, 309 N.E.2d 420, 421 (1974).

were not available generally to members of the public; [and the] plaintiff obtained the services not as a member of the public but only in consequence of his employment."[15]   The court concluded the plaintiff's exclusive remedy was workers' compensation rather than a common-law action for malpractice because the injury arose out of and in the course of the plaintiff's employment as a result of the alleged negligence of another *in the same employ.*[16]

We find *Garcia* distinguishable in a major respect—in *Garcia* it was undisputed that the physician was a co-employee of the injured worker.   The court noted that the doctor was employed by Imperial at a weekly salary to give medical care to its employees, that "[t]he usual payroll deductions were made from the doctor's salary check and he was covered under Imperial's medical plan and its workmen's compensation insurance policy."[17]

The other cases cited by Dr. Blanchard are also distinguishable on this basis.[18]

---

**15.**   *Id.*

**16.**   *Id.* at 422.

**17.**   *Id.* at 421.

**18.**   *See, e.g., Scott v. Wolf Creek Nuclear Operating Corp.*, 23 Kan.App.2d 156, 928 P.2d 109, 112 (1996) (finding, in a case where an employee was allegedly negligently treated for a heart attack by a physician who worked for Wolf Creek, that there was a causal connection between his employment and his negligent medical treatment; the court stated: "Scott received treatment because he was an employee of Wolf Creek. The physician's assistants who treated Scott were employees of Wolf Creek whose purpose was to provide medical treatment to Wolf Creek employees for both occupational and nonoccupational diseases and injuries.   In other words, Scott would not have been equally exposed to the risk of negligent medical treatment by Wolf Creek physician's assistants apart from his employment at Wolf Creek."); *Marange v. Slivinski*, 257 A.D.2d 427, 684 N.Y.S.2d 199, 200 (1999) (holding the fellow-employee rule of the workers' compensation exclusive remedy provision served to bar a plaintiff's malpractice action against a company physician, who was employed as a corporate medical director, for his alleged negligent failure to diagnose cancer in the plaintiff's wife, it being undisputed that the wife and the physician "were co-employees ... at all times relevant to this action"); *Franke v. Durkee*, 141 Wis.2d 172, 413 N.W.2d 667, 669 (Ct.App.1987) (finding workers' compensation was the exclusive remedy for the alleged negligence of an employer's in-house medical staff in a malpractice action brought by the

Accordingly, we find the circuit court did not err in finding Dr. Blanchard was an independent contractor and not a co-employee of Mr. Fuller; therefore, Mrs. Fuller's malpractice claim is not barred by the exclusive remedy provision of the Workers' Compensation Act.[19]

## II.

■ Dr. Blanchard additionally asserts the circuit court erred in granting summary judgment to Mrs. Fuller on his defense that he owed no duty of care to Mr. Fuller as a matter of law because there never was a physician-patient relationship. We disagree.

The circuit court ruled Dr. Blanchard "owe[d] a duty of care, albeit limited," to Mr. Fuller. The court concluded Mrs. Fuller was "entitled to go forward . . . [on] allegations that the defendant failed to timely advise an employee of abnormal medical findings and failed to recommend follow-up with another physician for testing, diagnosis or treatment." The court noted that "[t]he parties stipulated that [Mrs. Fuller] will be able to produce expert testimony that the defendant deviated from standard medical care."

We find there is evidence to support the circuit court's ruling since there was an established protocol, which Dr. Blanchard claimed to follow, which required him to inform employees of any adverse test results and to advise them to seek additional medical treatment as necessary. In this case, irrespective of Dr. Blanchard's status as either a company doctor or an independent contractor, Dr. Blanchard failed to inform Mr. Fuller of the adverse results of a prostate cancer screening test and to advise him to seek follow-up care from another physician. Due to this omission, Mr. Fuller's PSA

---

surviving spouse of an employee against a company doctor for his negligent failure to diagnose the employee's nonwork-related lung tumor; the court noted the surviving spouse had conceded that her husband and the physician in question were co-employees).

19. Having affirmed the circuit court's determination on this point, we need not address Dr. Blanchard's additional argument that the circuit court erred in also finding this was not a work-related incident. Even assuming the incident was work-related, as an independent contractor, Dr. Blanchard would still be subject to suit because he would simply be treated as a third-party tortfeasor.

level had doubled by the time the test was again performed, and Mr. Fuller died from prostate cancer.

■ We note that, ordinarily, "[t]he existence of a physician-patient relationship is a question of fact for the jury." [20] Dr. Blanchard does not contend that questions of fact remain in this case, so we do not consider that point here. Rather, Dr. Blanchard's only contention is that, based on the facts of this case as they are, the court committed an error of law in granting summary judgment to Mrs. Fuller; he maintains his defense should have prevailed. Consequently, we find no basis on which to disturb the court's ruling.[21]

**AFFIRMED.**

CURETON, A.J., concurs. KITTREDGE, J., concurs in a separate opinion.

---

20. *Tumblin v. Ball–Incon Glass Packaging Corp.*, 324 S.C. 359, 365, 478 S.E.2d 81, 85 (Ct.App.1996). In *Tumblin* we observed that a physician who has been retained by a third party to conduct an examination normally is not subject to a malpractice claim by the individual examined *unless* the physician offered or intended to treat, care for, or otherwise benefit the individual or injured the individual in the course of the examination. *Id.* at 365–66, 478 S.E.2d at 85. In the current appeal, Dr. Blanchard did not perform the screening tests merely for the benefit of Westinghouse, the employer. Rather, Dr. Blanchard acknowledged that his practice was to inform the Westinghouse employees of any adverse results from the cancer-screening tests and to advise them of the need to seek further evaluation when necessary. We believe this constitutes a benefit to the employee and care that would fall within the exceptions delineated in *Tumblin.*

We note that in *Tumblin,* we held that a physician fulfilled any responsibility he had to an employee by informing her of an elevated blood pressure reading and suggesting that she follow up with her private doctor. *Id.* at 367, 478 S.E.2d at 86. In contrast, in the case before us Dr. Blanchard allegedly failed to inform Mr. Fuller of the adverse results of a cancer-screening test and to advise him to seek further treatment as necessary.

21. This case concerned cross-motions for summary judgment regarding two of Dr. Blanchard's defenses; the circuit court simultaneously granted Mrs. Fuller's motion for summary judgment and denied Dr. Blanchard's motion. On appeal, the parties have blurred the distinction between the two motions. Because the *granting* of a motion for summary judgment is appealable while the *denial* of a motion for summary judgment is not, we are addressing Dr. Blanchard's arguments to the extent he appears to challenge the circuit court's grant of summary judgment to Mrs. Fuller as an error of law based on the facts

KITTREDGE, J.:

I concur. However, I write separately to express my concern with the jurisdiction of this court to entertain this appeal. In my judgment, Appellant's challenge on appeal is limited to the circuit court's *failure to grant him summary judgment.*[22] The refusal to grant summary judgment is not appealable. *Olson v. Faculty House of Carolina,* 354 S.C. 161, 580 S.E.2d 440 (2003); *Ballenger v. Bowen,* 313 S.C. 476, 443 S.E.2d 379 (1994).

Pursuant to cross-motions for summary judgment, the circuit court granted Respondent's motion. On appeal, Appellant claims error solely on the basis that the underlying action was barred as a matter of law by the exclusive remedy provision of the Workers' Compensation Act and because he owed no duty of care to Respondent's husband. It is significant to note that these issues, as recognized by the majority, are predominantly fact-driven. *See Nelson v. Yellow Cab Co.,* 349 S.C. 589, 594, 564 S.E.2d 110, 112 (2002) ("Whether a worker is an employee or independent contractor is a fact-specific matter resolved by applying certain established principles."); *Tumblin v. Ball–Incon Glass Packaging Corp.,* 324 S.C. 359, 365, 478 S.E.2d 81, 85 (Ct.App.1996) ("The existence of a physician-patient relationship is a question of fact for the jury."). The final brief and reply brief of Appellant make no claim that there

of the case, although, as stated, there has been an overlapping of these issues due to the procedural posture of the case. To the extent Dr. Blanchard appears to argue the court should have granted his motion for summary judgment, the denial of summary judgment is not properly before us and we do not address it. *See Silverman v. Campbell,* 326 S.C. 208, 486 S.E.2d 1 (1997) (reiterating that the denial of a motion for summary judgment is not appealable, even after final judgment); *Ballenger v. Bowen,* 313 S.C. 476, 443 S.E.2d 379 (1994) (stating the denial of a motion for summary judgment is not appealable). Neither party makes this distinction in the briefs and Mrs. Fuller does not assert that Dr. Blanchard is only arguing about the denial of his own motion for summary judgment, so we have addressed the issues in the manner outlined above.

22. This is not an appeal from a merits hearing. The appeal comes to us in the posture of a grant of summary judgment. While Appellant's final brief and reply brief purport to appeal from the circuit court's grant of summary judgment in favor of Respondent, his argument is focused solely on the lower court's failure to grant him judgment as a matter of law.

exists a genuine issue as to any material fact. As the majority correctly concludes, Appellant "does not contend that questions of fact remain in this case." In reaching the merits of this appeal, the majority is essentially rehearing the cross-motions for summary judgment. I believe we have neither the authority to reconsider the denial of Appellant's summary judgment motion nor the authority to grant him judgment as a matter of law on the fact-specific issues presented.

Thus, the issue as presented by Appellant is the functional equivalent of an appeal of the refusal to grant summary judgment. I would decline to address the merits and dismiss the appeal.